NORTHERN OHIO TRACTION. & LIGHT COMPANY ET AL. *v.* STATE OF OHIO ON THE RELATION OF PONTIUS, PROSECUTING ATTORNEY OF STARK COUNTY, OHIO.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 60. Argued October 18, 19, 1917.—Decided January 28, 1918.

Where there are no controlling provisions in state constitution or statutes and no prior adjudication by its courts to the contrary, a franchise for an interurban electric railway, granted by the proper state

authority without limit as to duration, and in the absence of circumstances showing an intention to give or accept a mere revocable right, is a contract not subject to annulment at the will of the granting authority.

Under the constitution and statutes of Ohio in 1892, county commissioners had power to grant franchises over public roads valid for twenty-five years, if not perpetually.

A resolution of county commissioners purporting to revoke an electric railway franchise, and treated by the state court as having that effect, amounts to state action, and, the franchise not being so revocable, such resolution impairs its obligation and is void.

Upon review of a judgment erroneously treating a franchise as revocable at the will of a board of county commissioners and upholding the board's resolution purporting to revoke it, the court is not called upon to determine whether the franchise term has since expired by limitation, or whether the state legislature (which has not acted) may have reserved power to revoke or repeal the franchise.

93 Ohio St. 466, reversed.

THE case is stated in the opinion.

*Mr. John C. Welty* and *Mr. Joseph S. Clark*, with whom *Mr. John C. Weadock* was on the briefs, for Northern Ohio Traction & Light Co.

*Mr. W. T. Holliday* filed a brief for Cleveland Trust Co., plaintiff in error.

*Mr. Frank N. Sweitzer* and *Mr. Hubert C. Pontius* for defendant in error.

Mr. JUSTICE McREYNOLDS delivered the opinion of the court.

The Northern Ohio Traction & Light Company through successive assignments from William A. Lynch acquired the interurban electric railroad between Canton and Massillon, Ohio, October, 1906; The Cleveland Trust Company is trustee under a mortgage on the road intended to

secure an issue of bonds. The line was constructed under
resolution by the Board of County Commissioners, Stark
County, passed February 22, 1892, which granted to Wil-
liam A. Lynch, and such railroad corporation as he might
cause to be incorporated for that purpose, the right to lo-
cate, construct, maintain and operate an electric railroad
along the state highway without specifying any limit of
time. This resolution is copied in the margin.[1]

---

[1] *Resolution for Right of Way for Electric Railway.*

Resolved, that the right is hereby granted to William A. Lynch and
to such railroad corporation as he may cause to be incorporated for
that purpose to locate, construct, maintain and operate an electric
railroad along either side of the state road running between Canton
and Massillon, between the line of the Canton Street Railway and the
corporate limits of the city of Massillon, said road to be constructed
of ties and rails in the customary manner with the necessary poles and
wires for an electric railroad. The ties shall not be laid nearer to the
center line of said road than nine feet, except where switches are con-
structed, at which places the present traveled driveway may be slightly
changed from its location to allow for the construction of such switches.
Wherever cutting or filling may be necessary in order to establish a suit-
able grade for said railroad, and such cutting or filling encroaches upon
the traveled portion of said road, or nearer than nine feet from the cen-
ter of the road or wherever the cut or fill would interfere with the use-
fulness or safety of the road, at all such places the grade of the road
shall be changed and its bed shall be re-graveled so as to restore it to
its present state of usefulness, instead of locating said railroad on one
side of the center line as above provided, the same may be located,
along the center line of said road, along the whole or any portion thereof
provided that in such case wherever so located said railroad company,
or the property owners along the road shall cause a good and sufficient
roadway to be graded on each side of said railroad, each of said road-
ways to be not less than sixteen feet wide in cuts and not less than
eighteen feet wide on fills, and each roadway shall be graveled to a
width of ten feet and eight inches in thickness and put in condition
for public travel without unreasonable delay. In case the railroad is
built upon the side of the road, crossings shall be constructed of plank
or other suitable materials, at all public highway crossings or intersec-
tions and in front of all private driveways on the side of the road on
which said railroad may be located. If the railroad be constructed in

A disagreement concerning rates having arisen, by res-
olution of March 27, 1912, the Commissioners declared
the original grant to Lynch not a perpetual franchise but
subject to termination by either party and that the pas-
senger rate was excessive and should be reduced.   It con-
tinued, "therefore, be it resolved, that unless said North-
ern Ohio Traction and Light Company comply with the
above mentioned matters of reduction of amount of fare
charged for transporting people between the cities of Can-
ton and Massillon and from intermediate points, together
with the transfer on the city lines of Canton and Massil-
lon, on or before the twenty-seventh day of April, 1912,
the said grant given to said William A. Lynch on Febru-
ary 22, 1892, to operate an electric railroad between the
said cities of Canton and Massillon, is hereby declared
terminated and the prosecuting attorney of this county
is hereby instructed to take such legal proceedings as may
be necessary to have said grant made null and void

---

the center of the road, the track shall be laid so that the ties shall not
be above the level of the highway on either side at the ends of the ties,
materially, or so as to prevent the crossing of teams and vehicles over
said railroad with reasonable convenience. All work that may be done
under this resolution upon and along said state road shall be done un-
der the supervision and subject to the control and to the approval and
acceptance of the commissioners, they reserving the right to make such
minor changes in location and the plans and methods of grading the
highway as the public interests may require.. It being understood and
agreed that said Wm. A. Lynch or the railroad company, before com-
mencing any part of said work shall enter into a bond in the sum of ten
thousand dollars for the faithful performance of the conditions enjoined
upon them by this resolution. This resolution to be of no binding ef-
fect until such bond is duly executed and accepted. It being further
understood and agreed that said Wm. A. Lynch or the railroad com-
pany before commencing any part of said work shall enter into a bond
in the sum of ($5,000) five thousand dollars conditional that said Wm.
A. Lynch or said railroad company shall keep said county and said
board perfectly harmless from any and all liability to abutting prop-
erty owners growing out of the construction of said road.

and the said electric railway removed from said public highway between the said cities of Canton and Massillon."

April 26, 1912, the Commissioners returning to the matter resolved:

"In the event that said demands are not met by said company on or before the time mentioned in the said resolution of March 27th, 1912, the prosecuting attorney of this county be and he is hereby instructed to immediately proceed to have injunction proceedings filed against said Northern Ohio Traction & Light Company, restraining said company from operating said electric railway on the public highway between the cities of Canton and Massillon or running cars thereon and to further compel said Northern Ohio Traction & Light Company to remove said railway from said public highway, and be it further resolved, that this resolution be contingent upon and in accordance with the conditions of the said resolution passed by this board on March 27th, 1912, . . . ."

Accordingly, August 13, 1912, Charles Krichbaum, Prosecuting Attorney, instituted *quo warranto* proceedings in the Circuit Court asking that plaintiff in error Traction & Light Company be ousted from exercising the franchise to operate a railroad along the Canton-Massillon highway, and be compelled to remove its tracks and switches. A demurrer was sustained because (1) the petition did not state facts sufficient to constitute a cause of action; (2) it did not state facts sufficient to justify relief prayed; (5) plaintiff had no legal power to try or bring the action. No appeal was taken from a final judgment entered June 3, 1913.

February 19, 1913, the Commissioners adopted another resolution which, after referring to the one of 1892 and the construction and operation of the railroad, stated that the grant continued from day to day so long as both parties consented and could be terminated at will, and then

declared "that said term of said grant and conveyance be terminated on this date." It is in the margin.[1]

---

[1] Resolution of the County Commissioners of Stark County, Ohio.

Whereas, the county commissioners of Stark County, Ohio, on the 22nd day of February, 1892, passed a resolution appearing on pages 17, 18, and 19 of Volume 8, Commissioners' Journal, Stark county, Ohio, and said resolution is as follows: [Here follows a copy of the resolution granting a right of way to Lynch above set out] and,

Whereas, an electric interurban railway, some time after the passage of said resolution, was built and constructed from Canton, Ohio, to Massillon, Ohio, upon the state road between said cities, the course described in the aforesaid resolution, and

Whereas, cars are now being operated upon said interurban electric railway and have been so operated for some years, by persons or companies, claiming to derive their rights and title from the said William A. Lynch, and claiming that their said title, right and interest emanate from the aforesaid resolution, and

Whereas, The Northern Ohio Traction and Light Company, a corporation, is now and has been, for several years last past, operating the interurban electric cars over said railway and carrying passengers over said interurban electric railway between the cities of Canton and Massillon, Ohio, and

Whereas, the said The Northern Ohio Traction and Light Company claims its rights, interests and privileges for the conducting of said business as assignee, transferee and successors of the said William A. Lynch, and his assigns or successors, based and founded upon the aforesaid resolution passed by the county commissioners of Stark county, Ohio, on the 22nd day of February, 1892, and recorded on pages 17, 18 and 19 of Volume 8, Commissioners' Journal, Stark county, Ohio, and

Whereas, the commissioners of the county of Stark and state of Ohio contend,

First. That the said William A. Lynch, at the time of the enactment of said resolution of the commissioners of Stark county, was not an incorporated company and was not entitled to the privileges of which a company incorporated in Ohio for the purpose of owning and operating an interurban electric line, was not such an entity that he could accept the interests, rights and titles granted by the county commissioners of Stark county in the aforesaid resolution.

Second. That whatever right, title, interest and privilege, if any, were conveyed by the aforesaid resolution to the said William A. Lynch

Obeying this last resolution, Hubert C. Pontius, Prosecuting Attorney, instituted the proceeding under review in the Supreme Court of Ohio. The petition alleged control of the railway by the Traction & Light Company; set up resolutions of 1892 and 1913 authorizing its construction and directing removal; and declared the company continued operations "which said conduct plaintiff avers is without warrant or authority of law." It concluded, "wherefore, because of the premises and matters herein

were conveyed and granted to the said William A. Lynch and to him alone, said grant and conveyance being a personal one.

Third. That the term of the grant included in the aforesaid resolution of the county commissioners, passed by the county commissioners on the 22nd day of February, 1892, as aforesaid is an indeterminate one, continuing from day to day and that said term extends and continues only so long as both parties to said grant and conveyance, to wit: Stark county, Ohio, through its board of county commissioners, the grantor, and William A. Lynch, or any company he might organize and incorporate, or any successor of the said William A. Lynch or the said company he might organize, the grantee, agree and consent, and that said grant and conveyance can be terminated at any time by either party to said grant and conveyance, or those claiming to hold or holding under said grant.

Now, therefore, be it resolved by the board of commissioners of Stark county, Ohio, assembled in session, that said term of said grant and conveyance be terminated on this date, to take effect on this date, and that the board of commissioners of Stark county, Ohio, refuse to extend to The Northern Ohio Traction and Light Company, which company claims to hold, title, right and interest as the successor, assignee and transferee of the aforesaid William A. Lynch and his successors and assignees, or either of them, the term for the operation of the aforesaid interurban electric railroad beyond this date.

Be it resolved that The Northern Ohio Traction and Light Company be notified that the commissioners of Stark county, Ohio, have on this date terminated the term of said grant and conveyance, under which said grant The Northern Ohio Traction and Light Company claim the right and privilege of operating said interurban electric railroad between Canton and Massillon, Ohio, and that the county of Stark and state of Ohio and the board of commissioners of Stark county, Ohio, will regard and do regard the operation of an interurban electric rail-

set forth, the plaintiff prays the advice of the court, and that the defendant, to wit, The Northern Ohio Traction and Light Company, be compelled to answer by what warrant it claims to have the use and to enjoy the rights, privileges and franchises aforesaid, in the operation of its said interurban electric railroad between the cities of Canton and Massillon, Ohio, in said county and state; and that it be ousted from exercising the same and be compelled to remove its tracks and switches from the said Canton-Massillon road between the corporate limits of the said cities of Canton and Massillon, and plaintiff further prays that such other and further relief be granted in the premises as to the court may seem just and proper."

---

road between Canton and Massillon, Ohio, on said state road running between Canton and Massillon, Ohio, from this date forward a usurpation and infringement upon the rights of said Stark county, Ohio, and said board of commissioners of said Stark county, Ohio.

Be it resolved that the prosecuting attorney of Stark county, Ohio, be directed and is hereby directed to take whatever steps he may deem necessary and advisable to prohibit and prevent The Northern Ohio Traction and Light Company or any other person, individual, corporation or company from continuing to operate an interurban electric railroad between the cities of Massillon and Canton, Ohio, on the state road, running between said cities by virtue of any rights, title or interest the said The Northern Ohio Traction and Light Company or any other person, individual, corporation or company may claim as resulting from the aforesaid resolution, enacted by the county commissioners of Stark county, Ohio, on February 22, 1892.

Be it resolved that the said The Northern Ohio Traction and Light Company be directed and is hereby directed to remove all its property, equipment and belongings from the right of way described by the aforesaid resolution, herein referred to as having been passed by the county commissioners of Stark county, Ohio, on February 22, 1892, and now occupied by the said The Northern Ohio Traction and Light Company, at once.

Be it resolved that a copy of this resolution be sent or delivered, and the auditor of Stark county, Ohio, is hereby directed to send or deliver to The Northern Ohio Traction and Light Company a copy of this resolution.

The answer relied upon final judgment in proceedings instituted by Krichbaum as an adjudication of the grant's validity; also a resolution by the county commissioners May 3, 1909, providing for double tracking as recognition and continuation of original franchise. And further, "this defendant says that said resolution of February 22, 1892, and said amending resolution of May 3, 1909, by the acceptance thereof by this defendant and its predecessors in title, constitute a contract between the board of county commissioners of Stark county, Ohio, and this defendant, and that any ouster of this defendant from its use and operation of said electric railroad between Canton and Massillon would be an impairment of the obligation of this defendant's contract, and a taking of this defendant's property without due process of law, and would also be a denial to this defendant of the equal protection of the law, all in violation of the Constitutions of Ohio and of the United States."

Without opinion or other explanation the Supreme Court pronounced the following decree October 19, 1915: "This cause came on to be heard on the pleadings and the evidence and was argued by counsel. On consideration whereof, the court finds upon the issues joined in favor of the plaintiff on the authority of *Gas Company* v. *The City of Akron*, 81 Ohio St. 33. It is, therefore, ordered and adjudged that the said defendant be ousted from the exercise and use of the rights, privileges and franchise described in the petition of the plaintiff in the operation of the interurban electric railroad therein described, and it is hereby ordered to remove its tracks and switches from the said Canton and Massillon road between the corporate limits of the said Cities of Canton and Massillon within ninety days from this date. It is further ordered and adjudged that the plaintiff recover of the defendant its costs herein, taxed at $————."

Dissenting, three members declared: "The sole ques-

tion in this case as presented is whether the board of county commissioners can revoke and annul a franchise granted by the state without having the power so to do delegated to it by the sovereign authority." 93 Ohio St. 466.

Plaintiffs in error maintain that the Commissioners' resolution dated February 19, 1913, was an exercise of state authority repugnant to the Federal Constitution, because it impaired their contract, took their property without due process of law, and denied them equal protection of the laws.

In *East Ohio Gas Co.* v. *Akron,* (decided October, 1909) 81 Ohio St. 33, relied upon to support the judgment below, a city ordinance, without specifying anything as to duration, provided "that the East Ohio Gas Company, its successors and assigns, are hereby granted the right to enter upon the streets, alleys and public grounds of the city of Akron, Ohio, . . . to maintain, operate, repair and remove mains and pipes . . . together with the right to construct and maintain, repair and remove all necessary regulators," etc. And the court said (pp. 52, 53): "It is true that the ordinance grants the right to enter and occupy the streets, but in respect to the time when it shall terminate its occupancy and withdraw, the ordinance is silent. May we infer from this silence that the gas company has a perpetual franchise in the streets? We are not now prepared to hold that the company has thus acquired such a perpetual franchise; . . . It comes then to this, that in the absence of limitations as to time, the termination of the franchise is indefinite and, to preserve mutuality in the contract, the franchise can continue only so long as both parties are consenting thereto."

The Supreme Court determined, in effect, that a valid franchise to construct and maintain the railroad granted to Lynch and his successors in 1892 was terminated by resolution of 1913. Accepting this ruling, is the latter resolution inoperative and void because in conflict with

Art. I, § 10, of the Federal Constitution? Manifestly it amounted to action by the State. *St. Paul Gas Light Co.* v. *St. Paul*, 181 U. S. 142, 148; *Ross* v. *Oregon*, 227 U. S. 150, 163.

It is suggested that in 1892 Ohio statutes only empowered county commissioners to grant franchises not exceeding twenty-five years in duration, and the present one accordingly expired in February, 1917. But by its final judgment (1915) the Supreme Court recognized a valid franchise existing in 1913 and declared it ended by the resolution of that year without discussing the subject of limitation. Consideration of the point is therefore unnecessary—our concern is with rights struck by the resolution. We express no opinion as to whether those have now expired. Neither are we concerned with the General Assembly's reserved power to revoke or repeal privileges; it has taken no action. Ohio Constitution (1851), Art. I, § 2, and Art. XIII, § 2.

Beyond serious doubt, under constitution and statutes of Ohio in 1892 county commissioners had power to grant franchises over public roads valid for twenty-five years, if not perpetually. Nothing said by the state courts prior to *East Ohio Gas Co.* v. *Akron* (1909) is cited which intimates that grants, without specified limit of time, were revocable at will. Evidently this was not the settled view in 1903 when the Circuit Court distinctly adjudged that accepted ordinances by a city between 1861 and 1873, authorizing construction and operation of street railways, silent as to time, created perpetual rights, subject however to revocation by the General Assembly. *State ex rel. Taylor* v. *Columbus Ry. Co.* (1903), 1 Ohio C. C. (N. S.), 145. This judgment was affirmed in 1905, 73 Ohio St. 363, "on the sole ground that the defendant had present right to occupy the streets at the time of the commencement of this action"—a result hardly intelligible upon the theory that the grants were revocable at will. Appar-

574.                    CLARKE, J., dissenting.

ently the doctrine announced in *East Ohio Gas Co.* v. *Akron*, was not suggested in either court.

The circumstances surrounding the grant of 1892 show no intention either to give or accept a mere revocable right.  It would be against common experience to conclude that rational men wittingly invested large sums of money in building a railroad subject to destruction at any moment by mere resolution of county commissioners. *Detroit* v. *Detroit Citizens' Street Ry. Co.*, 184 U. S. 368, 384.

Where there are no controlling provisions in state constitution or statutes and no prior adjudication by its courts to the contrary, we have distinctly held that franchises like the one under consideration are contracts not subject to annulment as here undertaken.  *Louisville* v. *Cumberland Telephone Co.*, 224 U. S. 649, 664; *Grand Trunk Western Ry. Co.* v. *South Bend*, 227 U. S. 544, 556; *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58, 73; *Old Colony Trust Co.* v. *Omaha*, 230 U. S. 100, 117.

As construed by the Supreme Court of Ohio the resolution of 1913 impaired a valid contract, upon which plaintiffs in error properly relied.  It was accordingly invalid and without effect.

The judgment below is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE DAY took no part in the consideration or decision of this cause.

MR. JUSTICE CLARKE, dissenting.

The parties to this suit are a Board of Commissioners of an Ohio county and two corporations organized under the law of the same State, and the jurisdiction of this court, if it exists at all, must be found in the claim that the resolution of the County Commissioners of February 19, 1913, is a law of the State of Ohio which impairs the ob-

ligation of the grant by the Commissioners of February 22, 1892, within the meaning of the Constitution of the United States. This resolution, printed in the margin of the court's opinion, declares that the Commissioners "contend" that the term of the grant of February 22, 1892, "is an indeterminate one, continuing from day to day, and that said term extends and continues only so long as both parties to said grant . . . agree and consent" and that it may be terminated at any time by either party to it. The resolution then declares the grant terminated as of the date of the resolution and that the prosecuting attorney of the county be, and he is, directed to take such steps as he may deem necessary to prevent further operation of the railroad on the highway, as provided for by the grant.

The effect of the decision by the Supreme Court of Ohio is that this "contention" of the County Commissioners that the grant is one determinable at the will of either party to it, is sound and that the Commissioners having elected to terminate it the rights of the railway company were at an end. This court reverses this decision of the state Supreme Court and holds that the grant of 1892 was not revocable at will by the County Commissioners, that the resolution of February 19, 1913, in terms revoking it, is invalid and void, and without deciding whether the power of the Commissioners was limited to the granting of such a franchise for twenty-five years and if so whether the grant has expired the court returns the case to the state courts for further proceedings not inconsistent with its opinion.

It is impossible for me to concur in the conclusion thus arrived at by the court and my reasons for dissenting will be briefly stated.

The resolution of February 19, 1913, is in terms simply an expression of the "contention" of the County Commissioners as to the legal effect of the grant of 1892, coupled

with notice of their election to terminate the same agreeably to their interpretation of it and with direction and authority given to the prosecuting attorney of the county to test in the courts the validity of the position asserted by the Board.

That such a resolution to apply to the courts of the country to establish an asserted legal right is not a law impairing the obligation of a contract is expressly decided, it seems to me, in *Des Moines* v. *Des Moines City Ry. Co.*, 214 U. S. 179, and in principle in *Defiance Water Co.* v. *Defiance*, 191 U. S. 184. A resolution such as was passed here is the only form in which the Board of County Commissioners could assert, in advance of litigation, its contention as to its rights under the contract, and it is not different in effect from what it would have been if the same contention had been expressed in another form, such as by way of an answer filed in behalf of the Commissioners in a suit brought by the Companies to enforce what they considered to be their rights under the grant. The decision of this court that the obligation of the contract was thus impaired amounts to holding "that whenever it is asserted on the one hand that a municipality [county] is bound by a contract to perform a particular act and the municipality denies that it is liable under the contract to do so, thereby an impairment of the obligations of the contract arises in violation of the Constitution of the United States. But this amounts only to the contention that every case involving a controversy concerning a municipal contract is one of Federal cognizance, determinable ultimately in this court." This court in the language quoted has declared such a conclusion to be obvious error in *St. Paul Gas Light Co.* v. *St. Paul*, 181 U. S. 142, 149.

These three clear and well reasoned cases seem to me to correctly decide that the court is without jurisdiction to consider this case and that it should be dismissed.

But even if we should assume that this court has jurisdiction to decide the case, it, nevertheless, would be impossible for me to concur in the conclusion arrived at.

The resolution of the County Commissioners under discussion does not, in words, define the term for which the franchise to operate a railroad on the public highway is to continue. The Supreme Court of Ohio holds that it results from this failure to define "in express terms," "in plain terms," the duration of the grant that it should be considered an indeterminate one, but this court holds that this failure to clearly define the duration of the grant results in its being a perpetual one, unless it be otherwise limited by constitution or statute.

The rule for the construction of grants such as we have here will nowhere to be found more clearly or imperatively stated than in the decisions of this court.

In *Blair* v. *Chicago*, 201 U. S. 400, 463, a decision obviously rendered upon "great consideration," it is declared that a corporation which would successfully assert a private right in a public street must come prepared to show that it has been conferred "*in plain terms,*" "*in express terms,*" and that any ambiguity in the terms of the grant must be resolved in favor of the public and against the corporation, "*which can claim nothing which is not clearly given.*" The sound reason given for this rule is that "grants of this character are usually prepared by those interested in them," and that "it serves to defeat any purpose concealed by the skillful use of terms, to accomplish something not apparent on the face of the act." This is declared to be "sound doctrine which should be vigilantly observed and enforced."

The Supreme Court of Ohio is not less definite in adopting the same rule of construction, saying, in *Railroad Company* v. *Defiance*, 52 Ohio St. 262:

"Every grant in derogation of the right of the public in the free and unobstructed use of the streets . . .

will be construed strictly against the grantee, and liberally in favor of the public; *and never extended beyond its express terms* when not indispensable to give effect to the grant."

What results from the application of this rule to the. grant we are considering?

The fact that two such courts as this one and the Supreme Court of Ohio differ so widely that the one holds the grant on its face to be perpetual, and the other holds it to be determinable at will, is, to me, convincing evidence. that a perpetual grant is not conferred "in plain terms," "in express terms," that it is "something not apparent on the face of the grant," and that, therefore, to give such a construction to the resolution is to find in it a most vital and important provision which "those interested" in obtaining the grant would have been eager to incorporate into it had they thought it possible to obtain consent to it. It is impossible for me to doubt that a proposal to·the County Commissioners to make the resolution read "Resolved, that the right is hereby granted . . . to construct, maintain and operate *perpetually* an electric railroad . . . on the State road between Canton and Massillon" would have been summarily rejected by the Commissioners. The public indignation which the making of such a grant would have excited was sufficient protection against its being made "in plain terms" and the rule we have quoted, in my judgment, should be the protection of the public against such a result being accomplished by construction.

The Supreme Court of Ohio may have been influenced in its decision of this case by the fact that from the time when the development of the State became such as to make of public importance the terms of grants of street railway rights in the streets and public roads of that State, the General Assembly of the State limited to twenty-five years the term for which such rights might be granted, either

by county commissioners or by municipal corporations. It is difficult for a man living in such a legal atmosphere with respect to such grants to think in terms of perpetual franchises. (An attempt to remove this restriction from grants by county commissioners was declared unconstitutional by the Supreme Court in *Railway Company* v. *Railway Company*, 5 Ohio C. C. (N. S.) 583, affirmed 73 Ohio St. 364.)

The decision of this case by the Supreme Court of Ohio is without written opinion, but it is rested by the court upon its previous decision in *East Ohio Gas Co.* v. *Akron*, 81 Ohio St. 33. In that case the City of Akron contended that the franchise granted to the Gas Company, in terms unrestricted as to time, was perpetual, and the Gas Company contended that it was determinable at the will of either party. After having the case under advisement for six months, and as the court says in its opinion "on account of its great importance to the public as well as to all public service corporations" having given unusual consideration to the case, the contention of the Gas Company was sustained and the grant was held "simply determinable, existing only as the parties mutually agree thereto." Paragraph three of the syllabus of the case, which in Ohio has the approval of the entire court, reads:

"While much regard will be given to the clear intention of the parties, yet where the *contract is entirely silent* as to a particular matter, the courts will exercise great caution not to include in the contract, by construction, something which was intended to be excluded."

This decision was rendered in 1909 by a unanimous court, and six years later it was made authority for the decision of this case. There is no Supreme Court authority in Ohio to the contrary. The judgment by an inferior court, cited in the majority opinion, that street railway grants made before the statutory limit of twenty-five years was imposed and silent as to duration were perpetual, was

promptly discountenanced when the case reached the Supreme Court. 73 Ohio St. 363.

A decision by a state Supreme Court, repeated after the lapse of six years, of a question involving the construction of local laws is, in my judgment, entitled to very great weight.

There was no question raised in the Ohio court but that a contract was created by the passing and accepting of the resolution of 1892, and the record shows that the sole question for decision, and which was decided, was, whether the grant was an indeterminate or a perpetual one.   If the grant had contained an express provision that it was revocable at will, it would have been impossible, having any regard to the meaning of words, to have said that the resolution of 1913 impaired its obligation.   It would have been simply and only a form of exercising a legal right the exercise of which was contemplated by the contract. The case is not different if the grant, without such expression, really means, as the Supreme Court of Ohio held that it means, the same thing as if such provision had been incorporated into it, and since the state court arrived at its result by the construction of the grant wholly unaffected by the subsequent resolution terminating it, it seems clear enough, upon repeated decisions of this court, that a decision should not be rendered here based on the theory that the grant was impaired by a resolution in form terminating it.   While this court has held that in such cases it will for itself determine whether a contract exists and what its terms are, yet where the decision of the state. court is so manifestly unaffected by the later "law" as it is in this case, it should be given weight and authority comparable at least to that which would have been given. it if it had been directed to the validity of the granting "law" under the state constitution.

The power to declare laws of States unconstitutional ,and to reverse the judgments of the Supreme Courts of

States is so fateful and is so unprecedented in the history
of governments other than ours that, as this court has re-
peatedly declared, it should be exercised only in cases
which are clear, and it is impossible for me to think that
this is such a case.

The only reason given by the court in its opinion for
differing with the Supreme Court of Ohio in its construc-
tion of the granting resolution of 1892 is that "The cir-
cumstances surrounding the grant of 1892 show no inten-
tion either to give or accept a mere revocable right.  It
would be against common experience to conclude that ra-
tional men wittingly invested large sums of money in
building a railroad subject to destruction at any moment
by mere resolution of county commissioners."

There is no evidence whatever in this record that there
were any special circumstances "surrounding the grant
of 1892," and to undertake to infer what the unexpressed
intention of the parties to this grant was twenty-five years
ago is, it seems to me, an unusual and unpromising en-
terprise.

That it would be against common experience to con-
clude that rational men would wittingly invest their money
in a railroad constructed under a grant determinable by
the action of county commissioners is reasoning which it
seems is more persuasive with courts than with investors
or men of affairs.  To reason upon what is reasonable is
always uncertain and often misleading, but in this case
we have ascertained facts to guide us.

Until recent years street railroad franchises (locations),
and also electric light, gas, and other public utility fran-
chises were revocable in Massachusetts, by aldermen in
cities, and by selectmen in towns (counties), and they are
still in the main so revocable, save that as to railroad
grants revocation is now subject to approval by the State
Railroad Commission, and as to some other "locations"
revocation is subject to approval by the Board of Gas and

Electric Light Commissioners.  Mass. Rev. Laws, 1902, vol. II, §§ 7, 32, pp. 1044, 1051.  *Springfield v. Springfield Street Ry. Co.*, 182 Massachusetts, 41, 48; *Boston Electric Light Co.* v. *Boston Terminal Co.*, 184 Massachusetts, 566; *Metropolitan Home Telephone Co.* v. *Emerson*, 202 Massachusetts, 402.  Yet hundreds of millions of dollars have been invested in that State in dependence upon these revocable ordinances.

In legislating for the District of Columbia, Congress has followed the Massachusetts example and has made street railroad grants indeterminate and revocable at the will of Congress.  12 Stat. 390, § 6; 27 Stat. 334, § 8.

Wisconsin, in 1907, adopted the principle of indeterminate franchises (Laws of Wisconsin, 1909, § 1797t), and the new constitution of Michigan recognizes it by providing that any franchise not revocable at will shall require the affirmative vote of sixty per cent. of the voters before it can become valid.  Constitution, 1908, Art. 8, § 25. Wilcox Municipal Franchises, vol. I, pp. 36, 37, vol. II, pp. 46, 47, and c. 27.

This form of franchise has been called "a tenure during good behavior," it has resulted in superior service to the public and, to the surprise of those who reason *a priori* on the subject, such franchises have proved in effect perpetual.  This type of franchise is undergoing modification in various parts of the country, which will, no doubt, improve it, but, of it even as it now is, Wilcox has this to say:

"Unquestionably, with the recognition of the unspeakable wrong that is inherent in the grant of perpetual franchises, and the great practical disadvantages that usually arise in connection with limited-term grants, public sentiment is rapidly crystallizing in lavor of the indeterminate franchise as the most promising basis for public control of street railways."  Municipal Franchises, vol. II, p. 240.

Perpetual franchises have proved to be such a. burden in communities upon which they have been imposed (Wilcox, vol. II, c. 26) that, for the reasons so well stated in Blair v. Chicago, supra, it is impossible for me to agree that any grant is perpetual unless the language used in it is so express and clear that reasonable men cannot differ in giving to it that effect.

Thus for the reasons (1) That a perpetual grant is not "in plain terms" made by the resolution of 1892; (2) That appropriate consideration seems to me not to be given to the decision of the Supreme Court of Ohio, and (3) That the reasons stated for inferring that an irrevocable franchise was intended by the granting power in the case before us are not sound reasons, I should dissent from the opinion of the court even if convinced that it had jurisdiction to decide the case.

MR. JUSTICE BRANDEIS concurs in this dissent.