Robinson, J.
The petition in error presents two questions:
1. Under the Miller act, Sections 504-2 and 504-3, General Code of Ohio, did The East Ohio Gas Company have the legal right to terminate service in the city of Cleveland on February 6, 1921, without obtaining the permission and consent of the public utilities commission?
2. Did the court of appeals impose a proper condition upon its injunction restraining the city from enforcing an ordinance fixing a 35-cent gas rate, *502 when it decreed that moneys impounded since October 1, 1921, under temporary orders of the court, should be finally distributed in accordance with an unknown rate to be fixed in the future in some manner provided by law?
It is conceded that the various franchises under which The East Ohio Gas Company now occupies the streets, alleys and public places of the city of Cleveland contain no provision fixing the time when such franchises shall terminate, except the ordinance of 1912, which contains the express provision: “This ordinance shall expire and the rights and privileges therein granted, and the obligations thereby created, shall terminate on the 6th day of February, 1921, and it is expressly understood that the acceptance of this ordinance by The East Ohio Gas Company shall not, in any wise, except as herein expressly provided, affect, change, modify or annul any existing rights under which said company is now operating, and shall be without prejudice to all its franchise rights and to the price ordinance now in force.”
It is, however, not claimed that all the rights and obligations of the parties hereto by reason of other franchises were merged in this franchise.
It is also conceded that the rate-franchises which had been accepted by the company had expired on the 6th day of February, 1921.
This court in the case of East Ohio Gas Co. v. City of Akron, 81 Ohio St., 33, decided October 19, 1909, held:
“1. When a municipal corporation, by ordinance, gives its consent that a natural gas company may enter the municipality, lay down its pipes therein and furnish gas to consumers upon terms and condi *503 tions imposed by the ordinance, which are accepted in writing by said company, such action by both parties constitutes a contract and the rights of the parties thereunder are to be determined by the contract itself. * * *
“2. Where the contract between a municipal corporation and an incorporated company is silent as to the duration of the franchise, such franchise is not perpetual but the duration thereof is simply indeterminate, existing only so long as the parties mutually agree thereto. The incorporated company may therefore voluntarily forfeit its right to exercise its privileges within the municipality and wholly withdraw therefrom; * * V’
In every case which has come before this court since the above decision involving the rights of a utility under a franchise accepted by the utility, and thereby ripened into a contract, where the contract has been silent as to duration, this court has refused to extend the contract in that respect beyond its expressed terms and has adhered to the declaration there made that having failed to stipulate as to the term of duration the parties thereto contemplated a construction of the contract, as to duration, according to the rule applicable to indeterminate contracts between individuals, the same being terminable at the will of either party thereto, and this notwithstanding the fact that the supreme court of the United States, in the ease of Northern Ohio Traction Light Co. v. State of Ohio, ex rel. Pontius, 245 U. S., 574, reversed the decision of this court in the case of Stat, ex rel. Pontius, v. Northern Ohio Traction & Light Co., reported in 93 Ohio St., 466, which case was decided by this court upon the authority of *504 East Ohio Gas Co. v. City of Akron, supra, it being the view of this court that the law as declared in East Ohio Gas Company v. City of Akron is now the settled law of Ohio.
The ordinance involved in the case of East Ohio Gas Co. v. City of Akron, and which upon acceptance became the contract, was passed September 26,1898, and necessarily this court in that case held that it was the law of Ohio in 1898 that a contract between a municipality and a public utility, silent as to the term of duration, was one determinative at the will of either party. The decisions of the supreme court of the United States in many cases concede the authoritative character of the interpretation of state laws and state constitutions by state courts, but the supreme court of the United States seems to have placed upon the case of State, ex rel. Taylor, v. Columbus Ry. Co., reported in 1 C. C., N. S., 145, and affirmed 73 Ohio St., 363, an interpretation which neither the language of the circuit court nor of this court, or the facts of that case, warrant. That case was decided by the circuit court of Franklin county, which at the conclusion of an opinion of some thirty pages, states:
“They [counsel for the relator] concede that by the new agreements or ordinances consent was given for twenty-five years, and a present right to occupy the. streets and when a right presently to occupy the streets is conceded, we do not consider or determine the moot question of its possible duration. * * *
“Being of the opinion, therefore, that the defendant has a present right to occupy the streets, the petition is dismissed.”
*505 That case was affirmed in this court by journal entry, reported in 73 Ohio St., 363, in which journal entry this court specifically declares:
“On consideration whereof it is ordered and adjudged by this court that the judgment of said circuit court be and the same is hereby affirmed on the sole ground that the defendant had present right to occupy the streets at the time of the commencement of this action.”
It will thus be seen that neither the circuit court-nor this court in that case had under consideration, or determined, the rights of The Columbus Bailway Company under the original franchise, silent as to term of duration, but that the case was decided by both courts upon the ground that “by the new agreements or ordinances consent was given for twenty-five years,” which period had not expired; and the circuit court expressly declared that it did “not consider or determine the moot question of its possible duration, ’ ’ while this court by apt and exact language limited its judgment to the ground above stated.
The doctrine announced in the case of East Ohio Gas Co. v. City of Akron, supra, as pointed out in the opinion in that case, was not at the time of its announcement a new doctrine in Ohio, this court, in 1895, in the case of Wabash Rd. Co. v. Defiance, 52 Ohio St., 262, having declared in the sixth proposition of the syllabus: “Every grant in derogation of the right of the public in the free and unobstructed use of the streets, or restrictive of the control of the proper agencies of the municipal body over them, or of the legitimate exercise of their powers in the public interest, will be construed strictly against the *506 grantee, and liberally in favor of the public, and never extended beyond its express terms when not indispensable to give effect to the grant.”
Whatever may have been the interpretation of courts in other jurisdictions of the duration of franchise-contracts silent as to 'the term of duration, and the authorities upon that subject are not in accord, it has been the settled law of Ohio, not only since the announcement in East Ohio Gas Co. v. City of Akron, supra, but at least since the date of the franchise-contract there under consideration, to-wit, September 26, 1898, that a franchise-contract silent as to term of duration is terminable at the will of either party thereto; and the declaration by the supreme court of the United States in the case of Northern Ohio Traction & Light Co. v. State, ex rel. Pontius, supra, was effective for the purpose of establishing the rights between «the parties thereto, but not for. the purpose of supplanting the interpretation of the laws of Ohio by this court.
Applying the doctrine of the case of East Ohio Gas Co. v. City of Akron to the franchises granted by the city of Cleveland to The East Ohio Gas Company, the franchises being silent as to term of duration or the term having expired in those franchise-contracts in which the term of duration was specified, it is apparent that either The East Ohio Gas Company or the City of Cleveland was at liberty to elect to terminate all contractual relation on and after the 6th day of February, 1921.
Unless the provisions of Sections 504-2 and 504-3, General Code, are applicable to the franchise-corn tracts here under consideration the service of notice upon the city of Cleveland by The East Ohio Gas *507 Company-on the 29th day of January, 1921, that it had elected to terminate service, in the city at mid: night February -6, 1921, terminated its legal obligation to continue the service after February 6, 1921.
Sections 504-2, and 504-3, General Code, were enacted in- 1919. The various ordinances under which the city claims the right to require the continued service of The East Ohio Gas Company were enacted in 1902, 1910, 1911 and 1912, and with the exception of the ordinance of 1912 contained no provision fixing time of duration, and the time of the duration of the ordinance of 1912 expired on February 6,1921. Each of these franchise-ordinances was accepted by the company, and the obligations of the parties thereto became contractual obligations. The extent of those obligations is measured by the law of Ohio then in force, and in so far as the law had had authoritative judicial construction that construction is applicable thereto. The mutual obligations of those contracts, measured by the law of the state, then in force, neither the city nor the state had power to impair.
Section 504-2, General Code, in so far as applicable here reads:
“No * * * public utility as defined in Section 614-2a of the General Code furnishing service' or facilities within the state of Ohio, shall abandon or be required to abandon or withdraw any # '* * gas line # * * or any portion thereof, pumping station * * * or ' service station * * * or the service rendered thereby, which has once been laid, constructed, opened and used for public business, * * * except as provided in section 504-3.”
*508 Section 504-3, General Code, in so far as applicable, reads:
“Any such * * * public utility * * * desiring to abandon or close * * * all or any part of such line or lines, pumping station * * ■ * or service station, shall first make application to the public utilities commission in writing who shall thereupon cause reasonable notice thereof to be given, stating the time and place fixed by the commission for the hearing of said application. Upon the hearing of said application said commission shall ascertain the facts, and make its finding thereon, and if such facts satisfy the commission that the proposed abandonment, withdrawal or closing for * * * service is reasonable, having due regard for the welfare of the public and the cost of operating the service or facility, they may allow the same; otherwise it shall be denied, or if the facts warrant, the application may be granted in a modified form. * * *
“The provisions of this section shall apply to all such service now rendered and facilities furnished or hereafter built and operated, and an order of the commission authorizing the abandonment or withdrawal of any such service or facility shall not affect rights and obligations of a * * * public utility beyond the scope of said order, anything in its franchise to the contrary notwithstanding. ”
The express purpose of these provisions of the code is that when a public utility begins “furnishing service or facilities within the State of Ohio,” regardless of the terms of the contract under which it is operating, or under which it began such operation, its right to terminate such service is dependent *509 upon the conclusions of the public utilities commission rather than upon the terms of the contract; that the public utilities commission in reaching its conclusion is to be governed by the reasonableness of the proposed abandonment of service by the utility or the reasonableness of the requiring of the discontinuance of service by the municipality, having regard for the welfare of the public and the cost of operating the service.
The questions whether the provisions of Sections 504-2 and 504-3, General Code, are read into and made a part of franchise-contracts entered into subsequent to the passage of those sections, the effect of those sections upon such contracts, and the rights of the parties thereto to contract, are not before this court in this ease. The question as to the effect of the provisions of those sections upon the contracts entered into by The East Ohio Gas Company with the city of Cleveland prior to their enactment is before this court for determination.
The parties hereto having entered into a contractual relation, the terms of which construed in the light of the decisions of this court entitled either to terminate the contract at will, such application of Sections 504-2 and 504-3, General Code, would impair the obligations of those contracts, in that it would impose in the public utilities commission the power to require .The East Ohio Gas Company to continue its service in the city of Cleveland after it had elected to terminate the contracts, in violation of the terms of the contracts as interpreted by this court; and in that it would make such continued service dependent not upon the obligations- of the contract but upon the question of the reasonableness *510 of the proposed abandonment of service; and in that it would impose power in the public utilities commission to require the city of Cleveland to permit The East Ohio Gras Company to continue to occupy its streets, alleys and public places beyond the term granted by its franchise-contracts and would deprive the city of the right to terminate an indeterminate franchise and make the right of the city to terminate the occupancy of the streets, alleys and public places dependent upon the judgment of the public utilities commission as to the reasonableness of the termination of such rights rather than upon the terms of the contract.
In so far as Section 504-3 attempts to make the provisions of that and the preceding section applicable “to all such service now rendered and facilities furnished,” it violates the provisions of the Ohio Constitution and of the Federal Constitution as to the impairment of contracts.
The court of appeals in its journal entry provided: '
“Pending review of this ease in the higher courts, or until a lawful rate is otherwise established in some manner provided by law, this injunction and decree so restraining the appellant shall continue in force upon the following conditions:
' “ (a) The rates to be charged by The East Ohio Gas Company for natural gas service in the City of Cleveland shall not be in excess of the following:
“For the first 10,000 cubic feet each month — 45c per thousand cubic feet.
“For the next 10,000 cubic feet each month — 55c per thousand cubic feet.
*511 “For the next 10,000 cubic feet each month — 65c per thousand cubic feet.
“For all over 30,000 cubic feet each month — $1.05 per thousand cubic feet.
“All the foregoing charges are subject to a discount of 5c per thousand cubic feet if paid within ten (10) days after date fixed for payment. Mini'mum charge — 75c per month.
“(b) The East Ohio Gas Company shall deposit in a separate account with The Union Trust Company of Cleveland, Ohio, within thirty (30) days after the dose of each month, all moneys received by it in such month from sales of natural gas in the City of Cleveland in excess of the rate fixed by said ordinance. Said moneys so deposited shall be subject at all times to the further order of this court and said Trust Company by accepting such deposit subjects itself thereto. Such' part of the money so deposited which is in excess of the rate that may ultimately be established by law or by agreement of the parties, together with interest that may be allowed thereon, shall be returned to the consumers who have paid the same and the balance, if any, with similar interest shall be paid to and become the property of The East Ohio Gas Company. * *
“(d) The court hereby retains jurisdiction of the conditions of this order and of all funds deposited under this order and its former orders, reserving to each party the right to apply to it from time to time for any modification of the conditions and rates herein named until such time as a rate otherwise fixed in some manner provided by law becomes effective.”
*512 The order of the court of appeals contemplates final distribution of the impounded fund upon the basis of a rate- to be established at some time in the future by agreement of the parties, or by law.
The power to fix rates does not rest in the courts. This court has here held that either party under the franchise-contracts under consideration is at liberty to terminate the contractual relations. The* decree of the court of appeals, then, as to the impounded fund, results in a continuation of the trust fund in the hands of the trustee until such time as the parties hereto by agreement shall arrive at the price which The East Ohio Gas Company shall sell its product to the city and its inhabitants, an event which may or may not occur.
The court of appeals having determined that the rate-ordinance of December 20, 1920, passed by the council of the city of Cleveland, fixing the rate at 35 cents per thousand cubic feet, was confiscatory, and this court having determined that no legal obligation exists by reason of the franchise-contracts between the East Ohio Gas Company and the-city of Cleveland on the part of The East Ohio Gas Company to continue service to the' city of Cleveland and its inhabitants, and that no legal obligation exists by reason of such contracts upon the city of Cleveland to continue to permit The East Ohio Gas Company to occupy its streets, alleys and public places, the unaccepted ordinance furnishes no basis upon which to fix the portion of the payments which the company may immediately appropriate and the ' portion of the payments which must be impounded with the trustee; this court being without power to fix rates, and without power to compel the parties *513 hereto to agree upon rates, the only lawful rates the plaintiff in error is entitled to are the rates on file with the public utilities commission; and the courts are without power to sequester the funds of the company lawfully collected by the company and to hold them to a time to be determined upon the happening of an event, which it cannot compel and which may never occur, and which if it ever does occur will be based upon conditions prevailing- at that time rather than upon conditions prevailing at the time the rights of the parties' thereto attached.
The rates filed with the public utilities commission being the lawful rates, there exists now no reason for the court, through a trusted, to longer hold possession of the sum so exacted by the company' and paid by its patrons for the service received from the company, in excess of the rate fixed in the ordinance, unless those sums are in excess of the rates on file with the public utilities commission at the time they were received; and this cause having reached a final determination all reasons for withholding from the plaintiff in error the sums heretofore impounded disappear, unless the rates demanded and received by the plaintiff in error under the former orders of the court of appeals and the court of common pleas are in excess of the rates at the time on file with the public utilities commission.
Upon this proposition the supreme court of the United States, in the case of Newton, Atty. Genl. of N. Y., v. Consolidated Gas Co. of New York, 42 S. C. Rep., 264, decided March 6,1922, said:
“It was error to direct ■ ultimate distribution of the impounded funds in accordance with any subse *514 quently approved rate. Eate making is no function of the courts and should not be attempted either directly or indirectly. After declaring the 8'0-cent rate confiscatory, the court should not have attempted, in effect, to subject the company for an indefinite period to some unknown rate to be proclaimed in the future upon consideration of conditions then prevailing. * * * All impounded funds should be promptly released to the Gas Company subject only to deductions for such costs as are clearly assessable to the prevailing party.”
The Union Trust Company of Cleveland will", therefore, be authorized to release 'to The East Ohio Gas Company all sums impounded with it in pursuance of the previous orders of the court of appeals and court of common pleas herein, except such sums, if any, as were collected by the plaintiff in error at a rate in excess of the rate on file with the Public Utilities Commission. Such excess, if any, will be distributed by it to the parties from whom such excess was exacted.
This cause, however, being one in equity, this court will make its judgment herein operate, in so far as possible, to cause the least inconvenience to the parties and the general public of the city of Cleveland.
The city of Cleveland will be enjoined from enforcing or attempting to enforce the rate provided in its ordinance of December 20,1920.
The sums impounded by the former orders of the court of appeals and court of common pleas, except so much thereof as may have been charged in excess of the rate on file with the public utilities commission, if any, will be ordered released to The East Ohio Gas Company immediately.
*515 The judgment of this court that The East Ohio Gras Company is under no legal obligation to continue its service in the city of Cleveland under its franchise-contracts, and under its notice of January 29, 1921, that it had elected to discontinue service, will he suspended in its operation until the first day of May, 1923.
Judgment of the court of appeals will be reversed and final judgment will he entered as indicated herein.

Judgment reversed.

Hough, Wanamaker, Jones, Matthias and Clark/ JJ., concur.
Marshall, C. J., dissents.