O’Neill, J.
The questions before this court are:
1. Is the 1922 contract between the city of Columbus and the city of Grandview Heights still in force and effect?
2. Does it control the rates for sewer service?
3. Is it of perpetual duration?
The appellant city of Columbus takes the position that the 1922 contract was terminable at will for the reason that there was no definite time for the termination of the contract stated in its terms. As authority for this proposition, the city of Columbus relies upon a series of cases, each of which involved political subdivisions and a ^privately incorporated public util *477 ity. East Ohio Gas Co. v. City of Ahron, 81 Ohio St., 33, 90 N. E., 40, 26 L. R. A. (N. S.), 92, 18 Ann. Cas., 332; East Ohio Gas Co. v. City of Cleveland, 106 Ohio St., 489, 140 N. E., 410; Village of Newcomerstown v. Consolidated Gas Co., 100 Ohio St., 494, 127 N. E., 414.
In the City of Akron case, supra, the city of Akron and The East Ohio Gas Company had entered into a franchise contract by which the company agreed to furnish gas to the residents of the city and the city granted permission to the company to use its streets to lay lines. There was a provision in the contract that the rates should not be changed by city council for a period of ten years. After the expiration of the ten years, the city council passed an ordinance reducing the rates and the company refused to accept the new rates. When the city’s position was not changed, the company notified the city it was terminating the contract and intended to withdraw from serving any residents of the city. The city of Akron then brought an action for injunction in the Common Pleas Court, asking the court to enjoin the company from withdrawing its service from the residents of the city. The court held that the company was entitled to withdraw its service and laid down the law in the syllabus of the case as follows:
“Where the contract between a municipal corporation and an incorporated company is silent as to the duration of the franchise, such franchise is not perpetual but the duration thereof is simply indeterminate, existing only so long as the parties mutually agree thereto. * * *”
A similar principle of law was laid down by the Supreme Court of Ohio in State, ex rel. Pontius, Pros. Atty., v. Northern Ohio Traction & Light Co., 93 Ohio St., 466, 114 N. E., 53. That case was appealed to the Supreme Court of the United States, which in Northern Ohio Traction & Light Co. v. State, ex rel. Pontius, Pros. Atty., 245 U. S., 574, 62 L. Ed., 481, 38 S. Ct., 196, reversed the judgment of the Supreme Court of Ohio.
In that case the county commissioners of Stark County, having granted a franchise contract to The Northern Ohio Traction & Light Company for an interurban electric railway between Canton and Massillon that contained no provision as to duration, when a disagreement arose as to rates, passed a resolu *478 tion providing that, unless the reduced rates were agreed to, the grant to operate the railway was declared terminated by a date certain.
The Supreme Court of the United States reversed the judgment in that case and referred to East Ohio Gas Co. v. City of Alerón, supra, upon which the county commissioners relied in that case, saying:
“Where there are no■ controlling provisions in state constitution or statutes or no prior adjudication by its courts to the contrary, a franchise for an interurban electric railway, granted by the proper state authority without limit as to duration, and in the absence of circumstances showing an intent to give or accept a mere revokable right, is a contract not subject to annulment at the will of the granting authority.”
The judgment in that case has not been modified or reversed.
In East Ohio Gas Co. v. City of Cleveland, supra, at page 489, the Supreme Court of Ohio refused to follow the Supreme Court of the United States.
That case involved a franchise granted by the city of Cleveland to The East Ohio Gas Company, which granted the right to the company to occupy the streets, alleys and public places of the city of Cleveland, but contained no provision fixing the time when such franchise should terminate.
The rate ordinance expired, and the city of Cleveland passed a new rate ordinance which, according to the opinion in the case, did not grant the company a sufficient rate to meet its operating expenses.
The company notified the city that it would discontinue gas service as of a date certain. The city of Cleveland then filed a petition for an injunction restraining the company from terminating gas service. The court, notwithstanding the decision of the Supreme Court of the United States in the case of Northern Ohio Traction & Light Co. v. State, ex rel. Pontius, Pros. Atty., supra, held to its former view in the case of East Ohio Gas Co. v. City of Ah fon, supra, and entered an order holding that the rate ordinance passed by the city council of Cleveland was confiscatory, that the company was entitled to collect, without impoundment as had been ordered by the Court *479 of Appeals, its rates on file with the Public Utilities Commission of Ohio, and that, under the contract, the company was under no legal obligation to continue its services in the city of Cleveland. However, the court suspended the operation of the notice of January 29, 1921, by which the company had elected to discontinue service, until May 1, 1923.
The doctrine of the East Ohio Gas Co. v. City of Akron case, supra, according to the court, was first established in the case of Railroad Co. v. Defiance, 52 Ohio St., 262, 40 N. E., 89. See, also, Village of Newcomerstown v. Consolidated Gas Co., supra.
The controlling matter in those cases, beginning with Railroad Co. v. Defiance, supra, is a concept of the public interest. Each of those cases are. alike in that they involved the attempt of a political subdivision to impose upon a private corporation a rate for public utility service which the courts determined was confiscatory.
When the corporation then made an effort to terminate its service because of the impossibility of giving service under a proposed confiscatory rate, the court permitted the company to terminate its services and remove its property under a franchise contract which had no provision with regard to its termination.
In the Northern Ohio Traction & Light Co. case, supra, the county commissioners, who had proposed a reduced rate, attempted to force the traction company to discontinue service on the grounds that the franchise contract made no provision for termination, and the Supreme Court of the United States (245 U. S., 574) held that such a contract was not terminable at the will of the political subdivision which was attempting to impose the reduced rate.
Each of those controversies involved an attack upon the rate which a private corporation, rendering a public utility service, was entitled to receive from the resident inhabitants of a political subdivision using the service, which rate was established by the elected public officials of a political subdivision.
In each instance, the Supreme Court of Ohio and the Supreme Court of the United States granted relief to the private corporation even though the two rules announced to accomplish the result stood in direct opposition to each other.
*480 It is evident from reading the cases that the courts arrived at these opposite rules in an effort to find a just solution of the individual controversy and to serve what the court, in each instance, believed was the public interest.
In the case before us, no private corporation is involved. This is a controversy between two municipalities. The service with which we are here concerned, i. e., the transportation and treatment of sewage, is essentially a public utility service — a public utility service conducted by municipalities and, therefore, unregulated by the Public Utilities Commission of Ohio.
There is a significant number of cases in Ohio dealing with this problem which hold that in contracts between political subdivisions for sewage and water services, where there is no time limitation expressed in an agreement, neither party can terminate it without the consent of the other, unless the contract, by its nature, indicates, with sufficient clearness, that the parties must have intended some other termination. See Mahoning County Commissioners v. Youngstown (City), 49 Ohio Law Abs., 186, 75 N. E. (2d), 724; Cuyahoga Heights (Village) v. Cleveland (City), 80 Ohio Law Abs., 530, 157 N. E. (2d), 145; City of Cleveland v. Village of Cuyahoga Heights, 81 Ohio App., 191, 75 N. E. (2d), 99.
A motion to certify the record in the last-mentioned case was denied by this court. That case is directly in point with the case now before this court. At the conclusion of that case, Judge Hurd seemed to indicate that in these cases a rule of reasonableness should prevail and the public interest should control.
The city of Columbus relies heavily upon the case of Jiga v. City of Martins Ferry, supra. The position of the city of Columbus is not well taken in this respect.
The Jiga case is clearly distinguishable from the case at bar. The purported contract was between the municipality and a nonresident consumer to furnish water. The court, in its opinion in that case, said that no contract had ever been signed by any city official, either authorized or unauthorized to do so. The court stated that the “alleged agreement was not more or less than it purported to be, and that was ‘a present proposal’ as to rates.”
*481 The proper rule of law for the determination of the instant-case should be the well established rule that, where no time is stipulated for the duration of such a contract, the law will imply a reasonable time for its duration and the law will require that the subdivision terminating such contract give reasonable notice of its termination to the other municipality.
Judge Reynolds, in his opinion in this case in the Common Pleas Court, stated the public interest in this controversy succinctly when he said:
“It would therefore be unthinkable that either of the parties to the contract would have contemplated a situation where the city of Columbus could arbitrarily discontinue the service it had agreed to perform.”
And later, when he said:
“Surely to hold here that the obligation of the city of Columbus to furnish the services provided by the contract of 1922 is one in perpetuity, can not be construed as against public interests.
“On the other hand, it would certainly be against public interests to have the services terminated, thus creating a serious health problem on the inhabitants of each of the corporations.”
There is nothing in the record in this case to indicate any valid reason for Columbus to discontinue transporting, through its sewer lines, and treating, in its sewage disposal plant, the sewage of the city of Grandview Heights. The only dispute that appears in the record is that over the rate to be charged for such services.
It is significant that there is nothing in the record of this case to indicate that “per capita cost to the city, plus 25%” profit for transporting and treating the sewage, is an unreasonable rate. On the record, the city of Columbus simply passed a rate ordinance and an ordinance which directed the City Attorney of Columbus and the Director of Public Service to disconnect the city of Grandview’s lines from the sewer lines of the city of Columbus.
Circumstances may well arise in the future which would make it in the public interest and reasonable for the city of Columbus to discontinue transporting and treating the sewage *482 of the city of Grandview. No such circumstances are presented by this record.
However, it was error for the Court of Appeals to hold that this contract is perpetual. The proper rule is that the contract continues for a reasonable time. It is not unreasonable for a contract, which provides for the transportation and treatment of sewage through sewer lines and into a treatment plant, to continue for a period of 40 years. The 1922 contract is still in full force and effect and has been supplemented by a series of agreements with regard to rates since that time.
Each of the parties under such a contract has a right to terminate such a contract upon reasonable notice to the other. However, an ordinance which authorizes the public officials of the city of Columbus to discontinue such sewer service forthwith by disconnecting sewer lines to the city of Grandview Heights in order to compel acceptance of a rate ordinance which provides rates in excess of the rate limitation of per capita cost, plus 25% maximum profit provision in the original contract, is not a reasonable notice of termination of such contract.
This court is not here called upon to decide, and it is not now deciding, what a reasonable length of time and reason for such notice would be.
The judgment of the Court of Appeals is reversed and the cause is remanded to the Court of Common Pleas for determination of the question of rates, which was reserved by that court.

Judgment reversed.

Taet, C. J., Zimmerman, Matthias, Grieeith, Herbert and Gibson, JJ., concur.