## ABBOTT et al. v. CITY OF DULUTH.

### (Circuit Court, D. Minnesota, Fifth Division. November 15, 1900.)

**1. TELEPHONES—RIGHT TO USE STREETS—MINNESOTA STATUTES.**

Laws Minn. 1860, c. 12, § 1, which grants to any telegraph company incorporated under the laws of the state "full power and right to use the public roads and highways in this state" for the purpose of erecting poles thereon, provided they shall be so located as in no way to interfere with the safety or convenience of ordinary travel, which statute has been continued in force since its enactment, and was subsequently amended to include telephone companies, includes in the terms "public roads and highways" streets, avenues, and alleys in cities and villages, as well as rural highways; and under its provisions, and subject only to its conditions, telephone companies were authorized to erect poles for their lines in the streets of cities without the grant of a franchise therefor from the municipal authorities, whose powers over the streets are only those delegated by the legislature, and subject to such direct control as the legislature may see fit to exercise.

**2. SAME—VESTED RIGHTS IN STREETS—WAIVER.**

A telephone company of the state, which erected its poles in the streets of a city after the act was amended to include such companies, by accepting the terms of a special act giving it the exclusive right to construct and maintain its lines in such streets for a term of years did not waive or surrender the rights given by the general statute, under which it had a vested right to continue to maintain its poles and wires after the termination of its exclusive franchise, of which right it could not be deprived by subsequent legislation or by the action of the city authorities.

**3. MUNICIPAL CORPORATIONS—POWERS OVER STREETS—REQUIRING REMOVAL OF TELEPHONE POLES.**

A grant of power to a city by its charter to prevent the incumbering of streets by wagons, carriages, lumber, posts, etc., or any other materials whatsoever, gives only the right of police regulation, and the power to prevent the obstruction of the streets unlawfully, and under such power the city cannot require the removal from the streets of telephone poles and wires erected under lawful authority from the state, where such action is not based upon any finding or claim that the poles or wires interfere with the safety or convenience of ordinary travel, but is taken solely in the interests of a rival company, or to compel the company owning such poles and wires to pay for a franchise to maintain the same.

In Equity. Suit for injunction.

Billson, Congdon & Dickinson, for plaintiffs.
Oscar Mitchell, for defendant.

LOCHREN, District Judge. Final hearing of this suit was had on October 25, 1900, upon the bill, answer, replication, and evidence. It appears that the Duluth Telephone Company is a corporation of the state of Minnesota, organized and doing business as a telephone company, under the provisions of title 1 of chapter 34 of the General Statutes of 1878 of that state, and under articles of incorporation duly adopted, signed, and executed in February, 1881, and then filed in the offices of the secretary of state of said state and of the register of deeds of St. Louis county, in said state, in which articles the general nature of its business was described and defined as follows: "The erection, maintenance and operation of a system of telegraph or telephone lines and a telephone exchange in Duluth, in the state of Minnesota." In January, 1882, and after the enactment by the

104 F.—53

legislature of the state of Minnesota of the special act entitled "An act to authorize the erection, maintenance and protection of telephone poles and wires upon and over the streets, avenues and alleys of the city, village and town of Duluth," approved March 7, 1881, and of chapter 73 of the General Laws of Minnesota of the year 1881, approved on the same day, which amended chapter 34 of the said General Statutes of 1878, and in reliance upon the provisions of said two enactments, the said Duluth Telephone Company proceeded to construct its telephone plant, and to transact and carry on the business described and defined in its articles of incorporation and in said special act; and has ever since, in its corporate name, been actively engaged in the construction, operation, repair, and renewal of its telephone system, and in the acquisition of property incident thereto, and in the performance of contracts and transaction of a general telephone business, and is operating in said city of Duluth, and mainly upon its highways, a telephone exchange system embracing many miles of wire supported upon poles planted just inside the curb line of sidewalks in the customary manner, and connected with its many hundreds of telephone instruments; and as a part of the same system has and operates many other miles of wire similarly supported on poles connecting said telephone system in Duluth with the city of Superior, in Wisconsin, and the villages of Proctor Knott, Cloquet, and Carlton, in Minnesota; and the said Duluth Telephone Company has expended on the construction of said telephone plant many thousands of dollars, and the same has become and is a property of great value. The said special act of March 7, 1881, which by its terms granted to the Duluth Telephone Company the exclusive right to erect, use, and maintain upon and over the streets, avenues, and alleys of the city, village, and town of Duluth telephone wire and poles for the period of 10 years, was duly accepted by said company; and the said legislature, by the terms of chapter 254 of the Special Laws of Minnesota of the year 1889, extended its provisions to apply to and cover the territory then included in the corporate limits of the city and town of Duluth and the village of West Duluth as the same was then or might thereafter be established, continuing the rights granted until March 8, 1899. All the allegations of said bill relative to the execution and delivery by said Duluth Telephone Company to the complainants, as trustees, of the mortgage or deed of trust of January 2, 1900, and as to its purport, and to the recording of the same, and as to the bonds secured thereby, the amount of such bonds outstanding, and by whom held and owned, are true as stated in said bill. The defendant city of Duluth, and the village of Duluth as existing in the year 1881, were severally municipalities organized and existing as is stated in defendant's answer, and having the powers of control in respect to highways, streets, sidewalks, alleys, and public grounds set forth in said answer; and the Duluth Telephone Company has not received from either of those municipalities any special authority to place its poles or suspend its wires upon or along any highway, street, alley, or public grounds in said city or village. But, acting upon the assumption that said Duluth Telephone Company had lawful authority and right to so place its poles

and wires, all such poles and wires have been so placed under the direction and supervision of the proper officials of said city and village respectively. The ordinance entitled "An ordinance providing for the sale by the city of Duluth of a franchise for the said city, for the establishment and operation of a telephone exchange system in the said city, from and after March 9th, 1899, and for the receiving of bids and terms for the same," a copy of which is annexed as "Exhibit A" to said answer, was passed by the common council of said city November 29, 1898, and approved by the mayor on the day next following, as is stated in said answer; and all the allegations of said answer relative to the desire of aldermen and officers of the defendant city that said Duluth Telephone Company should, in compliance with the terms of said ordinance, submit a proposition for a franchise enabling it to continue to do business as a telephone company within said city, and the refusal of said company to consider such proposition, and insisting that it had a legal right to occupy the streets, avenues, and alleys of said city without the consent of the city, and the writing by its vice president of the letter, a copy of which, marked "Exhibit B," is attached to said answer, are all true as stated in said answer. Also all the allegations of said answer relative to the bid received by said city from R. H. Evans, and the passage of the ordinance "Exhibit C," and its acceptance by said Evans, and compliance therewith by said Evans and his assign, and the completion by such assign of a telephone plant in all respects as provided in such ordinance, which plant is in full and complete operation within said city of Duluth, are true as stated in said answer. The assign of said Evans now owning said new plant is known as the Zenith City Telephone Company. All the allegations of said bill relative to the threats by the common council, mayor, and other officers of said city, and their intention to cut down and remove from the highways of said city the telephone poles and wires of said Duluth Telephone Company, and obstruct said company in the use and operation of its said system and plant, and interfere and prohibit repairs, renewals, and extensions thereof, and to wholly exclude said company from the use of the highways of said city, and of any easements or rights therein, are true as stated in said bill. The formal resolution passed by said common council, and served upon the Duluth Telephone Company, is admitted by the answer to have been passed by the said common council on February 13, 1900, after the completion of the new telephone plant of the other company, and served upon the Duluth Telephone Company, and is as follows:

"Be it resolved by the common council of the city of Duluth, that the Duluth Telephone Company be, and hereby is, notified and required on or before the 1st day of April, 1900, to remove from the streets, avenues, alleys, and public grounds of the city of Duluth its telephone wires and telephone poles, and to cease using said streets, avenues, and alleys for the purpose of carrying on its telephone business. Be it resolved further, that the city clerk is hereby authorized and directed to cause copy of this resolution to be immediately served upon said telephone company, and to file proof of the same in his office."

The removal of the telephone poles and wires of the Duluth Telephone Company from the streets, avenues, alleys, and public grounds of the city of Duluth, as threatened and intended to be accomplished

by the common council, mayor, and officers of that city, will, if so accomplished, destroy the plant and property of the Duluth Telephone Company in that city, and damage the complainants in the destruction or lessening of the value of the security of their said mortgage or trust deed in a larger amount than is stated in said bill. The poles of said Duluth Telephone Company are not more than 16 inches in diameter, and, as placed along the curb line of the sidewalks in said city, do not, with the wires supported thereon, constitute any real or practical obstruction to the use of the streets and other highways of said city; and the threats and purpose of the said common council and other city officers, and their action in respect to the removal of such poles and wires from such streets and highways, is not because of any pretended obstruction, nor in any bona fide exercise of police powers, but merely for the purpose of favoring the said Zenith City Telephone Company, and of preventing any further competition with it, by destroying the plant and property of the Duluth Telephone Company in that city.

The first question to be considered as arising upon the facts stated is whether the Duluth Telephone Company had the right to construct and has the right to maintain its poles and wires in the streets and alleys of the city of Duluth, in the absence of special authority from the common council, and irrespective of the special acts referred to, which gave it such right exclusively, while they were in force, but which expired on March 8, 1899. The first legislation bearing on the subject is chapter 12 of the General Laws of 1860 (section 1), which provides that:

"Any telegraph company incorporated or organized under the laws of this state, shall have full power and right to use the public roads and highways in this state, on the line of their route, for the purpose of erecting posts or poles on or along the same, to sustain the wires or other fixtures: provided, however, that the same shall be located as in no way to interfere with the safety or convenience of ordinary travel on or over the said roads and highways."

Succeeding sections of the act provide penalties for injuries to any telegraph line, and for divulging the contents of messages improperly. The General Statutes of 1866 (chapter 34, tit. 1, § 28) embodied said first section of the act of 1860, but omitted and repealed the subsequent sections, which were, however, re-enacted in substance by chapter 22 of the General Laws of 1867. The effect of this legislation, which has substantially continued until the present time, is to recognize the public character of the services of telegraph companies as common carriers of messages, amenable to reasonable public regulation, and deserving of such place on the public highways as will not interfere with their primary use for ordinary travel. But it is contended on the part of the defendant that the terms "public roads and highways," used in this statute, apply only to rural public roads and highways, and were not intended to include streets, alleys, or lanes in cities or villages, which are always placed under the control of the municipalities. It is enough to say that the control over streets, alleys, and lanes in cities or villages, which is vested in the municipal government, is but delegated power, and in no way detracts from the power of the legis-

lature to exercise such control itself by direct enactment whenever and so far as it at any time sees fit. If the words "the public roads and highways in this state," in their ordinary and legal signification, include streets, avenues, and alleys in cities, there are no other words in the statute to lessen or limit their meaning. "Public road" and "highway" are usually understood to mean the same thing, and include all ways which of right are common to the whole people, and therefore differ from private roads or byways. A highway is a passage or road through the country, or some parts of it, for the use of the people. It is the generic name for all kinds of public ways. 1 Bouv. Law Dict. 586. The words used must, therefore, be held to include streets, avenues, lanes, and alleys in cities and villages, unless there is something in the subject-matter of the enactment showing that it is inapplicable to these urban highways. That does not appear, but the contrary. Telegraphs connect cities and villages, and have their stations in such places throughout the country and the civilized world. It is quite as necessary to their construction and operation that they have the right to be and continue upon these highways of cities and villages as upon rural highways. I must hold, therefore, that the words of the statute under consideration include all urban as well as rural highways.

This view is strengthened, so far as legislative interpretation may strengthen it, by the amendment enacted by chapter 73 of the General Laws of Minnesota of the year 1881, which inserted after the word "telegraph" the words "or telephone"; thus granting to telephone companies the same power and right to use the public roads and highways in this state which had before that time been granted to telegraph companies. At the date of that amendment the telephone, a then recent discovery or invention, was beginning to be used in cities and villages. In each city or village it was a local enterprise, exclusively urban, with its poles and wires upon nearly all streets, and its instruments in the dwellings and business places. Long-distance telephones connecting one town with another were not in use. The amendment of 1881, referred to, if it only granted rights along rural roads, would never have been asked or enacted; but granting, as it did, such rights upon all highways in the state, it was of great value to telephone companies, besides saving them the annoyance of dealing with municipal bodies for rights and powers, and so obviously for the advantage of the public as to induce the legislature to act directly and at once in respect to all parts of the state. Although this amendment was enacted after the Duluth Telephone Company had executed and filed its articles of incorporation, it was enacted and in full force before that company began the construction of its plant and the placing of its poles and wires upon the highways of Duluth; and it must be considered that its expenditures were made and its plant constructed in reliance upon this general law. The rights and powers granted thereby became contract rights in the company as fully as if the amendment had been enacted and in force when the company was organized and incorporated. These rights and powers, being unlimited in respect to duration, were valuable property rights,

not merged nor excluded by the special acts referred to, which granted in addition the exclusive monopoly of occupying the streets, etc., of Duluth, and later of West Duluth, with telephone poles and wires for a limited time. This monopoly, which was the only real grant made by the special acts, ceased with the lapse of the prescribed time; but the unlimited right to occupy the highways of the city remains and continues. The acceptance by the company of the special exclusive rights granted by the special acts for a fixed time, and presumably of value, cannot be construed as a refusal, disclaimer, or surrender of the rights and powers granted to and vested in the company by the general law. There was no inconsistency. The company could receive and enjoy all the rights and powers given by the general law and the special acts. No election or disclaimer was required or expected. Both the general law and the special acts were beneficial, and will, therefore, be presumed to have been equally acted on and relied upon.

Chapter 74 of the Laws of 1893 has no bearing. It can only be given a prospective construction, and be held applicable to enterprises undertaken after its passage. The plant of the Duluth Telephone Company had been constructed, and its rights had become vested rights, and beyond the power of the legislature to destroy or diminish, before the passage of that statute; so that it is needless to resolve the doubt whether it applies to telephone wires supported upon poles and along streets and alleys in cities and villages, or only to all railways, and to such other constructions as are placed beneath the surface of the ground.

It is very obvious from the allegations in the defendant's answer that its threats and purpose to remove the poles and wires from the streets and other highways of the city of Duluth are not made in any bona fide exercise of the police powers which the common council may lawfully exercise, nor because such poles and wires are in the judgment of the common council such an obstruction of the streets and highways as to constitute a nuisance in fact. The answer alleges a desire on the part of the aldermen and officers of the city that the Duluth Telephone Company should continue its business if it would submit a proposition for a franchise under the ordinance Exhibit A. The answer also alleges that the assign of Evans has, under the authority of the common council, constructed and completed a new telephone plant, which the evidence shows is constructed with poles and wires upon and along the streets and highways of said city precisely like that of the Duluth Telephone Company, except for a short distance on Superior street. The resolution of the common council of February 13, 1900, discloses the real purpose of the common council in its notification to the Duluth Telephone Company "to cease using the said streets, avenues, and alleys for the purpose of carrying on its telephone business." The evidence shows—what is matter of common knowledge—that the obstruction to travel caused by the placing of telephone poles along the curbstones of streets as in this case is fanciful and unsubstantial, as is any inconvenience from the wires supported on such poles. The power granted by the charter of the city of Duluth to the com-

mon council "to prevent the incumbering of streets, sidewalks, alleys, public grounds and wharves with carriages, carts, wagons, sleighs, boxes, lumber, firewood, posts, awnings or any other materials or substances whatsoever" cannot be construed to be an absolute grant of power, as the language might seem to import. Any person has the lawful right to drive his carriage, cart, wagon, or sleigh, loaded with boxes, firewood, lumber, posts, awnings, or any other materials or substances whatsoever, over and upon all streets, alleys, etc., of Duluth in the usual manner; and although driving of carriages, etc., is an actual incumbrance upon the streets, yet, as it is lawful, it cannot be prevented by the common council under this grant of power, which in fact gives only the right of police regulation, and the power to prevent unlawful obstructions on streets and other highways. As the Duluth Telephone Company has the lawful right to have its poles and wires upon and along these highways of the city, the common council has no more authority to remove them therefrom than it has to prevent the lawful use of the highways by ordinary vehicles. I do not mean to assert that the buildings, business, travel, and use upon some street, or section of a street, may not be such that due regard for all interests involved may warrant the common council in requiring that all electric wires in such street or section be placed in underground conduits, and that the poles, when no longer used, be removed. But no such question arises here. If I am correct in what is above expressed, it follows that the Duluth Telephone Company has the lawful right to continue to have its telephone poles and wires upon and along the highways of the city of Duluth, and to extend the same to accommodate the increasing needs of that growing city, and that the complainants, for the protection of their security, are entitled to the relief prayed for in their bill of complaint, with costs. Decree may be entered accordingly, and the terms thereof, unless agreed to by counsel, may be settled upon two days' notice.