**CITY OF SAPULPA et al. v. OKLAHOMA NATURAL GAS CO.**

No. 10828—Opinion Filed March 30, 1920.

Rehearing Denied Sept. 14, 1920.

(Syllabus by the Court.)

1. **Gas—Rates Under Franchise of City— Power of Corporation Commission to Change Rates.**

The Corporation Commission's order changing the rate to be charged for gas provided for in a gas franchise granted is not void because of depriving the city and its inhabitants of property and rights without due process of law, as the state, having granted the franchise through the city as its agent, has the right to change the provisions by changing the rate through the Corporation Commission.

2. **Same—City as Governmental Agency in Granting Franchise.**

A municipality in granting a franchise to a gas corporation which permits the use of the streets and alleys for the purpose of furnishing the citizens with gas, acts as a governmental agency of the state; and those cities in the Indian Territory prior to statehood were simply governmental agencies of the United States.

3. **Territories—Regulation of Public Utilities in Indian Territory—Powers of Congress.**

Prior to statehood, Congress had the power to delegate authority to the municipalities within Indian Territory to regulate service and fix rates of public utilities, and also had the power to revoke said authority and to regulate said public utilities directly or through another agency or commission.

4. **Gas—Power of Indian Territory City to Fix Rates for Definite Period.**

Sections 754 and 755, Mansfield's Digest, did not clearly confer upon the city of Sapulpa prior to statehood power and authority to agree upon a fixed rate for which gas could be furnished to the inhabitants of said city for a definite period of time.

5. **Same—Source of Rate-Fixing Powers— States—Corporation Commission.**

An order of the Corporation Commission changing the rate to be charged for gas provided by a franchise granted by the city of Sapulpa prior to statehood is not void for impairment of contract rights, as, the United States having granted said franchise through the city as its agent, and upon statehood the state of Oklahoma becoming substituted to the rights of the United States, the state has a right to change the provisions thereof through its representative, the Corporation Commission.

Appeal from State Corporation Commission.

Complaint by the city of Sapulpa and others against the Oklahoma Natural Gas Company before the State Corporation Commission. Judgment for the gas company, and complainants appeal. Affirmed.

Van H. Albertson and T. L. Blakemore, for plaintiffs in error.

Ames, Chambers, Lowe & Richardson, for defendant in error.

McNEILL, J. The city of Sapulpa, by its commissioners, on behalf of the city and on behalf of the citizens of Sapulpa, filed a complaint before the Corporation Commission wherein they alleged that the city of Sapulpa, on the 23rd day of May, 1904, then a part of Indian Territory, through its mayor and council granted a gas franchise to the Sapulpa Oil & Gas Company by enacting an ordinance, which was accepted by the company, whereby the company was granted the

right to construct its pipe-line in the streets and alleys of the city of Sapulpa for a term of 20 years, and further providing that under and by virtue of said franchise contract the company was to furnish gas to the citizens of Sapulpa at a rate of not to exceed 25 cents per 1,000 cubic feet; and further alleged that the Oklahoma Natural Gas Company is now the owner of said franchise; that since the first day of October, 1918, the Oklahoma Natural Gas Company has been charging and receiving from the citizens 35 cents per 1,000 cubic feet. It is further alleged that the Oklahoma Natural Gas Company is making said charges by reason of a general order of the Corporate Commission of the state of Oklahoma made in 1918, whereby the gas company was granted the privilege by the Corporation Commission of Oklahoma to charge said rate; and plaintiffs allege that the order of the Corporation Commission is void, and constitutes an impairment of the franchise contract of the city of Sapulpa with the gas company, and is in violation of the provisions of the Constitutions of the United States and the state of Oklahoma. A copy of the franchise is set out and made a part of the petition. To this petition, the Oklahoma Natural Gas Company filed a demurrer and the demurrer was sustained, and from the judgment sustaining the demurrer, the city has appealed to this court.

The question involved is whether the petition states a cause of action and whether the state of Oklahoma through its Corporation Commission had power and authority to make an order and give consent that the gas company might increase its rates for gas during the existence of the franchise without the consent of the city of Sapulpa. This case is controlled by the case of City of Pawhuska v. Pawhuska Oil & Gas Co., 64 Oklahoma, 166 Pac. 1059, which case was affirmed by the Supreme Court of the United States and reported in 250 U. S. 394, 63 L. Ed. 1054, and followed in City of Durant v. Consumers' Light & Power Co., 71 Oklahoma, 177 Pac. 361, unless it can be said that a different rule applies to this case for the reason the franchise granted in the instant case was entered into prior to the adoption of the Constitution of the state of Oklahoma.

It is now settled in this state that section 7, art. 18, of the Constitution of the state of Oklahoma, and chapter 93, Session Laws 1913, give the power and authority to regulate public utilities to the Corporation Commission of the state. The city of Sapulpa contends that it and its citizens obtained a greater right by virtue of this franchise and contract with the gas company, granted prior to adoption of the Constitution, than those contracts executed since said time secure.

It is contended that the United States had delegated to the city of Sapulpa authority to regulate the service, and to fix rates, and having delegated said authority to the city, said authority could not have been set aside by the United States prior to the adoption of the Constitution, nor can the same be set aside by the state since the adoption of our Constitution. The general rule is that a city, in granting a franchise to a gas company, water company, or street railway company, acts in the capacity of a governmental agency of the state. The general rule is, where the Legislature has delegated authority to a municipality to grant a franchise and the franchise has been granted for a definite period of time, which franchise fixes the rates, and said franchise has been accepted by the grantee, the same creates a binding and legal contract between the parties which can only be changed by mutual consent.

The only question presented in the case at bar is whether the state through its agency, the Corporation Commission, could mutually agree with the gas company to change the rates to be charged for gas without the consent of the city. As to whether a state which has delegated authority to a municipality to regulate service and fix rates may revoke said authority, that depends upon the statutes of the different states and the act which gave to the city the power and authority to enter into said franchise and contract. The rule is stated by Pond on Public Utilities, page 503, as follows:

"The Legislature has the power to delegate authority to the municipality to regulate service and to fix rates, it also has the power to revoke such authority and to regulate directly or through another agency or commission, and only in those cases where the authority delegated to the municipality clearly confers upon it the power to agree upon a fixed rate for a definite period, which the municipality clearly does by contract, is the state precluded at any time from regulating the service and readjusting the rates. On the other hand, where the state has clearly authorized the municipality to contract for the service of municipal public utilities and to fix the rate for a definite period, the contract of the municipality made pursuant to such authority cannot be set aside by the state."

The rule announced in the notes of the American Law Reports Annotated, vol. 3, p. 738, is as follows:

"The great weight of authority is to the effect that while a municipality may, in the absence of any direct action by the state,

enter into a contract with a public utility, whereby the rates to be charged by the latter are fixed, and such contract, as between the parties themselves, is binding, nevertheless the state has power which it may delegate to an administrative body, such as a public service commission, to increase such rates, when because of increased costs or any other reason such rates are no longer reasonable. In other words. franchise rate contracts are not such contracts as may not be increased by the state, without infringing the constitutional guaranty.

"This rule apparently has not been expressly repudiated in any jurisdiction except Ohio and Virginia, where, as is shown above, the cities have been given express and definite power to make inviolable contracts as to rates.

"In general terms it may be said that these decisions rest on two general grounds: First, franchise contracts must be deemed to have been entered into with knowledge of the inherent and reserved power of the state to alter such contracts when necessary so to do for the public welfare; second, municipalities being merely agents of the state, the state may, at any time, waive the rights of the municipality in the contract.

"Not every case which passes upon the question makes the distinction between these two grounds. and frequently both reasons are given for the decision. The attempt has been made, however, to separate the decisions, according as they lay the greater emphasis upon the one or the other of the two doctrines."

Said note is followed by an annotation and classification of the different cases.

The status of towns within Indian Territory was stated by the Supreme Court of the United States, in the case of Farmers' and Mechanics' Savings Bank of Minneapolis v. Minneapolis, 232 U. S. 516, to be as follows:

"The Indian Territory was not made an 'organized territory', but by section 31 certain general laws of the state of Arkansas, as published in Mansfield's Digest (1884) were put in force there until Congress should otherwise provide; among these, the chapter relating to municipal corporations (sections 722-959)."

The sections of Mansfield's Digest which gave to the city of Sapulpa the authority to enter into said franchise are as follows:

"Sec. 754. They shall [the city council] have the power to provide for lighting the streets and alleys of the city by gas or otherwise, and to authorize the construction of gas works and street railroads.

"Sec. 755. For the purpose of providing water, gas ,and street railways, the mayor and city council may contract with any person or company to construct and operate the same, and may grant to such person or company for a time which may be agreed upon, the exclusive privilege of using the streets and alleys of such city for such purpose or purposes."

In passing on a case where the statutes were very similar the Supreme Court of Wisconsin, in the case of Manitowoc v. Manitowoc & Northern Traction Co., 129 N. W. 925, stated as follows:

"Statutes granting to cities the right to make long-time contracts binding on the public, and fixing a rate to be charged by a public service corporation, are not looked upon with favor, and will be strictly construed. It is only where the right is very clearly conferred that the state will be held to have relinquished its power to enact laws regulating tolls. (Citing cases.)

"No specific authority having been conferred on the city to enter into the contract in question, the right of the state to interfere whenever the public weal demanded was not abrogated. The contract remained valid between the parties to it until such time as the state saw fit to exercise its paramount authority, and no longer. To this extent and to this extent only is the contract before us a valid subsisting obligation. It would be unreasonable to hold that by enacting section 1862 or section 1863, St. 1898, the state intended to surrender its governmental power of fixing rates. That power was only suspended until such time as the state saw fit to act."

A case where the statute was very similar is the case of City of Portland v. Public Service Commission (Ore.) 173 Pac. 1178. The eighth and ninth paragraphs of the syllabus of the opinion are as follows:

"Public Service Commissioner's order changing the rate of fare provided for in street railway franchise granted is not void, because of depriving the city and its inhabitants of property and rights without due process of law, as the state, having granted franchise through city as its agent, has right to modify franchise by changing the rate of fare through its representative, the Public Service Commission.

"City's authority to represent the state in regard to the fares of a street railway, which had been given a franchise, was annulled by act creating Public Service Commission, and such authority given to such commission, who as state's agent could agree to change in the franchise allowing company an increased rate of fare."

These cases announce the same rule as laid down by the Supreme Court of the United States in the case of City of Pawhuska v. Pawhuska Oil & Gas Co., supra.

There are several cases which hold the statutes of that particular state clearly authorize the municipality to fix rates for a definite period, and that a contract of the

municipality made pursuant to such authority cannot be set aside by the state. Such is the holding of the case of City and County of Denver v. Mountain States Telephone and Telegraph Co. (Colo.) 184 Pac. 605, which case was appealed to the United States Supreme Court and the case dismissed for want of jurisdiction upon the authority of the City of Pawhuska v. Pawhuska Oil & Gas Co. case; the dismissal being decided December 10, 1919. The Supreme Court of Colorado held that under article 20 of the Constitution of Colorado the city and county of Denver had the power to regulate telephone rates to be charged for local service within its territorial limits. The case there was identical with the case at bar, but the Constitution of Colorado, as amended, specially reserved to the city of Denver the right given it by the charter, which was the power to fix rates.

Plaintiffs in error rely upon the case of Interurban Railway & Terminal Co. v. Public Utilities Commission (Ohio) 120 N. E. 831. This is an Ohio case, and the statute of Ohio which delegated to the city and county commissioners the right to fix the fares to be charged by the street railway company was as follows:

"The council, or the commissioners, as the case may be, shall have the power to fix the terms and conditions upon which such railways may be constructed, operated, extended, and consolidated."

While the court in that case passed upon issues involved in this case, yet the facts were materially different, for the reason that neither the city nor the state attempted to change the rates. The state, however, through its Public Utilities Commission, declined to hear a petition to change the rates, for the reason it had no jurisdiction. The court held that the statute gave to the municipality the right to fix the rates, and that the state could not set aside the authority granted during the existence of the franchise, although the state had not done so, nor attempted to do so.

Council for plaintiffs in error also rely upon the case of Columbus Power & Light Co. v. City of Columbus, decided April 14, 1919, reported in the United States Supreme Court Advance Sheets, vol. 13, page 416. In that case the railway company brought injunction proceedings, attempting to enjoin the city from enforcing its ordinance. The Supreme Court of the United States dismissed the petition, and simply held that the franchise contract was a binding contract between the parties. It must be remembered that the state through its Public Utilities Commission did not agree to change the rates, nor

would the city agree to change its rates, nor did the Supreme Court decide whether under the statutes of Ohio the state could consent to change the rates without the consent of the city. To the same effect is the case of City of Detroit v. Detroit Citizens Street R. Co., 46 L. Ed. 592. The identical question was involved in that case that was involved in the case of Columbus Power & Light Co. v. City of Columbus, supra. The statute which granted to the city of Detroit authority to fix the fare was as follows:

"Sec. 20. The rates of toll or fare which any street railway company may charge for the transportation of persons or passengers over their road shall be established by agreement between such company and the corporate authorities of the city or village where the road is located, and shall not be increased without consent of such authorities."

The Supreme Court of the United States held that the state had delegated the authority to the city and the railway company had consented to the fare and entered into a contract, and that that contract was binding and enforceable upon both parties and could only be changed by mutual consent, but the Supreme Court of the United States did not pass upon the question of whether the state might have agreed to a change of rate, nor whether the state was precluded from agreeing to such a change, as that question was not involved.

Numerous cases are cited by both sides in support of their contentions, all of which are referred to and annotated in the notes of 3 American Law Reports, 730 to 749, and classified. We feel that it is unnecessary, in view of the fact that said cases are annotated in such an extensive note, to attempt further to classify or distinguish the same.

We are therefore of the opinion that neither section 754 and 755 nor the act of Congress which put in force chapter 29, Mansfield's Digest, clearly conferred upon the city of Sapulpa power to fix the rates for a definite period of time, and said statute having failed to clearly authorize the municipality to contract and to fix the rates for a definite period, the authority to so change the rates was reserved to the United States. The United States government, prior to statehood, could have revoked the authority and by direct act of Congress regulate the rates, or could have regulated the same through some other agency or commission delegated by it. Upon Oklahoma becoming a state and Sapulpa becoming a part thereof, the state of Oklahoma became substituted in place of the United States, and Sapulpa then became a governmental agency of the state of Okla-

homa. The state of Oklahoma has authorized the Corporation Commission to regulate and fix the rates of public utilities within the state, and when the Corporation Commission and the owner of the franchise mutually agreed upon a different rate from that fixed by the franchise, the same became binding and of full force and effect. The petition in this case having alleged that the Corporation Commission consented to the change and made an order permitting the change in the rates, that being true, the petition fails to state a cause of action, and the court did not err in so holding.

For the reasons stated, the judgment of the commission is affirmed.

OWEN, C. J., and JOHNSON, PITCHFORD, and BAILEY, JJ., concur.