CITY OF TULSA v. SOUTHWESTERN
BELL TELEPHONE CO.
No. 1293.
District Court, N. D. Oklahoma.
Jan. 29, 1934.

H. O. Bland, City Atty., Bert E. Johnson, Asst. City Atty., N. E. McNeill, and Davidson & Williams, all of Tulsa, Okl., for plaintiff.

Spielman, Cantrell & McCloud, of Oklahoma City, Okl., and Biddison, Campbell & Biddison, of Tulsa, Okl., for defendant.

FRANKLIN E. KENNAMER, District Judge.

Plaintiff's petition contains three causes of action. The first is to recover 4 per cent. of the gross revenue derived by defendant from its business at Tulsa from January 5, 1923, to June 1, 1932, under certain provisions of the city charter hereafter mentioned; the second is to eject defendant from the streets and alleys of the city; and the third is to recover damages for defendant's alleged unlawful use of the streets and alleys of plaintiff from January 5, 1923, to June 1, 1932.

At the close of all the evidence, defendant has moved for a directed verdict.

The town of Tulsa, Indian Territory, was incorporated January 18, 1898. The townsite was surveyed and platted December 11, 1901, and the plat approved by the Secretary of the Interior April 11, 1902. Some time prior to January 5, 1903, one Hall had constructed a telephone system in Tulsa, but his service to the public seems to have been unsatisfactory. The Indian Territory Telephone Company made several unsuccessful attempts to purchase Hall's business. The town officers, believing the Indian Territory Telephone Company would render more efficient service, were desirous of having that company in Tulsa. They conceived the idea that if an ordinance was adopted granting the company the right to do business in Tulsa, Hall's willingness to sell his business might be affected. Consequently, on January 5, 1903, the town of Tulsa adopted Ordinance No. 36, purporting to grant to the Indian Territory Telephone Company, for a term of twenty years, a franchise to conduct a telephone business in Tulsa, and to use the streets and alleys for that purpose. The Indian Territory Telephone Company did not construct a system under that franchise, but shortly after its granting, purchased Hall's business and equipment.

On July 28, 1903, the town of Tulsa was made a city of the second class by court order signed by Judge C. W. Raymond.

The Indian Territory Telephone Company filed with the Secretary of the Interior a plat showing the location of its telephone system in Tulsa, and on June 8, 1907, the plat was approved by the Secretary of the Interior, by writing across it: "Approved: Subject to the provisions of the Act of March 3, 1901 (31 Stat. 1083), Departmental regulations of March 26, 1901, and the amendment of March 15, 1907, thereto, and subject also to any prior, valid existing rights and adverse claims."

The defendant has, since statehood, succeeded to all the rights of the Indian Territory Telephone Company.

After Oklahoma was admitted to the Union, and on July 3, 1908, the city of Tulsa adopted a special charter, which was approved by the Governor of Oklahoma on January 5, 1909.

The plaintiff concedes the right of defendant to use the streets and alleys from January 5, 1903, to January 5, 1923, the period covered by Ordinance 36, before mentioned. Section 1 of article VII of the Charter of Tulsa prohibits the use of streets and alleys for the construction or operation of a telegraph line, telephone system, or any other business of a public or quasi public nature without obtaining a franchise. (On April 12, 1928, the section was amended in respects not here material.) Section 7 of article II, paragraphs 1 to 5, provide that no franchise or easement shall ever be held valid, unless granted pursuant to the charter; that no act or omission of the city or its officers shall be construed to confer or extend a franchise or easement by estoppel, that no franchise shall ever be directly or indirectly extended beyond its original term, and that no franchise shall be granted or renewed without the approval of a majority of the qualified voters of the city voting thereon at a special or general election; and paragraph 5 of said section provides: "All persons or corporations to whom franchises may hereafter be granted, or their assigns and successors, shall as compensation for the right or privilege enjoyed pay to the city a sum not less than four per cent of the gross receipts of the business pursued by the holders of the franchise. The amount of said bonus or compensation shall be fixed by ordinance granting the franchise and shall be payable on the second day in January in each year for the preceding year. Said bonus or compensation shall be exclusive of and in addition to all lawful ad valorem taxes upon the values of the franchises or other property of the holders thereof, and lawful occupation taxes imposed upon the occupation or calling of the holder of such franchise. The Board of Commissioners may, however, in their discretion in the order granting any franchise provide that no bonus shall be paid for the first five years thereof."

This paragraph was effective from the date of the approval of the charter until April 12, 1928, when it was amended to read: "All persons or corporations to whom franchises may hereafter be granted or their successors and assigns, shall as compensation for the right and privilege enjoyed pay to the city a sum of not less than one (1) per cent nor more than four (4) per cent of the gross receipts of the business pursued by such franchise holder, payable annually. The Ordinance granting the franchise shall fix the time and manner of pay-

ment, and shall further provide for the determination by the Board of Commissioners or governing Board of the City the rate of such gross receipts tax to be paid from year to year according to the earnings and financial condition of the holder thereof. Such compensation shall be in lieu of any vehicle or license tax. The Board of Commissioners may, however, in their discretion, in the Ordinance granting such franchise provide that no compensation shall be paid for the first five (5) years during which the same is in force and effect."

■■ Plaintiff's contention, and the theory of its first cause of action, is that in view of these charter provisions, the defendant, by using the streets and alleys for its telephone system after expiration of Ordinance 36, has become liable to the city for 4 per cent. of the gross proceeds of defendant's business. Not so. It is apparent that some latitude is given as to the amount of the bonus or compensation to be paid, the original section providing for not less than 4 per cent., and the amended section providing for from 1 to 4 per cent. Both permit waiver of the bonus for as long as five years. Both presuppose the adoption of an ordinance fixing the compensation and the terms of the franchise, and such an ordinance can only be adopted after affirmative vote of the people of the city at a general or special election. The manifest intention is that legislation is required to make the charter provisions effective. Indeed, the charter provisions may be said to be a grant of power to legislate, and nothing more. They are not self-executing. Davis v. Burke, 179 U. S. 399, 21 S. Ct. 210, 45 L. Ed. 249; Tampa Waterworks Co. v. Tampa, 199 U. S. 241, 26 S. Ct. 23, 50 L. Ed. 170; State ex rel. Reardon v. Scales, 21 Okl. 683, 97 P. 584; Ex parte Wagner, 21 Okl. 33, 95 P. 435, 18 Ann. Cas. 197.

■ Even if the charter provisions be considered as self-executing, they are not enforceable here. The levy is attempted to be made on total gross revenue of defendant, without regard to the source of the revenue, and is in addition to all property taxes. The evidence is undisputed that a substantial part of such revenue arises out of interstate commerce, and the equipment of defendant in the streets and alleys of Tulsa is an essential factor in producing interstate tolls. In these circumstances, the charter, if self-executing, must be held invalid as imposing a burden on interstate commerce. New Jersey Bell Telephone Company v. State Board of Taxes

and Assessments of the State of New Jersey, 280. U. S. 338, 50 S. Ct. 111, 74 L. Ed. 463; Western Union Telegraph Company v. State of Texas, 105 U. S. 460, 26 L. Ed. 1067; Wabash, etc., Ry. Co. v. Illinois, 118 U. S. 557, 7 S. Ct. 4, 30 L. Ed. 244.

Compare Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 15 S. Ct. 268, 360, 39 L. Ed. 311.

■ Since the charter provision itself provides no method of or formula for separating local and interstate revenue for the purpose of collecting the percentage sought to be exacted, the entire provision is void, even as to revenue from purely local sources. Damselle Howard v. Illinois Central R. R. Co., 207 U. S. 463, 28 S. Ct. 141, 52 L. Ed. 297; Weems v. Bruce (C. C. A. 10) 66 F. (2d) 304. And see Western Union T. Co. v. State of Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; Eureka Pipe Line Co. v. Hallanan, 257 U. S. 265, 42 S. Ct. 101, 66 L. Ed. 227.

■ The charter provisions, being void, cannot be made the basis for an implied contract. An unconstitutional law is no law at all. No rights may be based on it, nor are any duties imposed by it. Cooley's Constitutional Limitations (7th Ed.) p. 259; 12 C. J. p. 801; Mayor, etc., of Baltimore v. Williams (C. C. A. 4) 61 F.(2d) 374. The situation presented by this case is entirely different from that in City and County of Denver v. Stenger (C. C. A.) 295 F. 809, and that case is not authority here.

· As a defense to all three of the causes of action in plaintiff's petition, defendant urges that the Secretary of the Interior on June 8, 1907, pursuant to Act of Congress of March 3, 1901 (31 Stat. 1077), granted to defendant's predecessor in interest, the Indian Territory Telephone Company, a right of way in the nature of an easement for the construction, operation, and maintenance of telephone lines and offices for general telephone business in the city of Tulsa.

■ Title to all land in the Creek Nation was formerly vested in it, subject to plenary control by the United States. The Act of June 28, 1898 (30 Stat. 495), provided for the incorporation of cities and towns in the Indian Territory having two hundred or more residents (section 14), and for the platting of town sites with proper and necessary streets, alleys, and public grounds. Tulsa was incorporated under this act. That act did not grant to cities and towns the power to enter into contracts for the construction and operation of telephone systems, that

right being reserved to the Indian Nation. Muskogee Nat. Tel. Co. v. Hall, 4 Ind. T. 18, 64 S. W. 600, 602.

The Act of May 31, 1900 (31 Stat. 237), also authorizes the laying out of town sites, but contains no specific reference to telephone lines. The first act making express provision for rights of way for telephone and telegraph lines is the Act of March 3, 1901 (31 Stat. 1083 [25 USCA § 319]), which empowered the Secretary of the Interior to grant rights of way in the nature of easements for the construction, operation, and maintenance of telephone lines in lands in the Indian Territory, including lands in incorporated cities and towns. Muskogee Nat. Tel. Co. v. Hall, 4 Ind. T. 18, 64 S. W. 600, 603; South McAlester-Eufaula Tel. Co. v. State, 25 Okl. 524, 106 P. 962.

■ Plaintiff's contention, however, is that upon approval of the plat of Tulsa on April 11, 1902, by the Secretary of the Interior, there was a dedication of the streets and alleys to the public, the Secretary's power was exhausted, and the Act of March 3, 1901, did not give him any power as to streets and alleys in Tulsa. This contention is supported by an opinion of the Assistant Attorney General for the Interior Department, rendered June 9, 1906, and approved by the Secretary of the Interior. While this opinion has weight, it is not binding on the court. If the Secretary of the Interior had not the power to grant rights of way because his prior approval of town plats operated as a conveyance to the public, then the Indian Nation did not have the power for the same reason. The town did not have the power, as decided in the Hall and South McAlester Cases, supra. Yet the existence and exercise of such a power was essential to the proper development of the Indian country. Defendant suggests the approval by the Secretary did not divest him of further control because deeds to town lots were subject to his approval. But it seems to me that the effect of the Secretary's approval of the town-site plat is not the decisive test. Congress had plenary power to regulate commerce between the states and with the Indian tribes, and as to all lands within the Indian Territory, including lands in incorporated towns, it was the sovereign, and had the same power as that possessed by a state with reference to highways within the state. This forms a firm foundation for the power to enact the Act of March 3, 1901, and to make it effective as to lands within the limits of incorporated towns. Cherokee Nation

v. Southern Kansas Ry. Co., 135 U. S. 641, 10 S. Ct. 965, 34 L. Ed. 295; Muskogee Nat. Tel. Co. v. Hall (C. C. A. 8) 118 F. 382; South McAlester Tel. Co. v. State, supra, 25 Okl. 524, 106 P. 962; Owensboro v. Cumberland Tel. & Tel. Co., 230 U. S. 58, 33 S. Ct. 988, 57 L. Ed. 1389; Louisville v. Cumberland Tel. & Tel. Co., 224 U. S. 649, 32 S. Ct. 572, 56 L. Ed. 934; City of Sapulpa v. Oklahoma Natural Gas Co., 79 Okl. 196, 192 P. 224.

■ It is also contended that the grant is invalid because the Secretary's regulations were not complied with. But the Secretary had power to suspend these regulations. Hallam v. Commerce Mining & Royalty Company (C. C. A. 10) 49 F.(2d) 103.

■ I hold that, as to the original town of Tulsa, defendant acquired a valid grant of a right of way and right to conduct a telephone business that, by acceptance, became a vested right, and upon the advent of statehood was protected by section 1 of the Schedule to the Oklahoma Constitution. See the Cumberland Cases, supra, 230 U. S. 58, 33 S. Ct. 988, 57 L. Ed. 1389, and 224 U. S. 649, 32 S. Ct. 572, 56 L. Ed. 934; Northern Ohio Traction & Light Co. v. State of Ohio, 245 U. S. 574, 38 S. Ct. 196, 62 L. Ed. 481, L. R. A. 1918E, 865; Ohio Public Service Co. v. State of Ohio, 274 U. S. 12, 47 S. Ct. 480, 71 L. Ed. 898. The defense is sustained in so far as the original town site is concerned.

Another defense urged as to all three causes of action is based on a state statute.

In 1890 the Legislature of Oklahoma Territory enacted a statute, now section 11976, Okla. Stat. 1931, which grants to the owners of telephone lines "the right of way over lands and real property in this State, and the right to use public grounds, streets, alleys and highways in this State, subject to control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or across, and the place the poles to support the wires are located."

■ Upon the advent of statehood this statute became applicable to all the territory embraced within the state, absent some provision of the Constitution of Oklahoma that renders it inoperative. The city of Tulsa urges that the statute never became effective because it grants a perpetuity in contravention of section 32, article 2, of the Constitution of Oklahoma, which provides that perpetuities are contrary to the genius of a free government and shall never be allowed. City relies on Okmulgee v. Okmulgee Gas Co., 140 Okl. 88, 282 P. 640. In that case the Supreme Court of Oklahoma held invalid House Bill 4 (Laws 1925, c. 102), which provided any franchise granted by a municipality might be exchanged for a permit issued by the corporation commission, revocable under certain conditions, but to remain in force until revoked. The court discussed section 5 (a) of article 18 of the Constitution, which provides that no franchise shall be granted, extended, or renewed for a longer term than twenty-five years, and held that if that section applied only to grants by municipalities, the revocable permit, being for an indeterminate period, was a perpetuity and void under the provisions of section 32, article 2. This construction of the Oklahoma Constitution by its Supreme Court is binding on the federal courts. Hawks v. Hamill, 288 U. S. 52, 53 S. Ct. 240, 77 L. Ed. 610. It must therefore be decided whether or not section 32 of article 2 of the Constitution, as construed by the Supreme Court of Oklahoma, strikes down section 11976, Oklahoma Statutes 1931, in so far as it applies to this case.

Section 11976 is not the grant of a franchise or the grant of a right to transact business. It is the grant of an easement; that is, an interest in real estate. That there is a distinction between an easement and a franchise must be obvious. It is recognized by the Supreme Court of Oklahoma in South McAlester-Eufaula Telephone Co. v. State, 25 Okl. 524, 106 P. 962. In Iowa Telephone Co. v. City of Keokuk (D. C.) 226 F. 82, the facts were in many respects identical with those in this case. It was there urged that the Iowa statute granting telephone companies a right of way was invalid because it granted a perpetual franchise, and perpetual franchises were against public policy of the state, as shown by the decisions of its courts. The court held that the statute did not grant a franchise or a right to do business, that it did grant the "bare right" to the use of the streets, and that such a grant was not a perpetual franchise and against public policy.

Furthermore, section 2, art. 9, Oklahoma Constitution, provides that: "Every * * * telephone or telegraph corporation * * * organized or authorized to do a transportation * * * business under the laws of this State for such purpose, shall * * * have the right to construct and operate its line between any points in this State.

• • •" This section, dealing specifically with telephone companies, seems to furnish authority for the enactment of section 11976, supra, and prevails over other sections of the Constitution which, in general language, may seem to prohibit the enactment of the statute.

A system of communication by telephone is of more than local interest. The citizens of Tulsa use the telephone to communicate, not only with their neighbors in Tulsa, but with the residents of the state of Oklahoma, the United States, and, indeed, the world. The evidence shows that a telephone in the city of Tulsa can be directly connected with several hundred thousand telephones in the state, and with over seventeen million different telephones in the United States. The necessity of adequate means of communication and the interest of the state in providing for and maintaining such a system must be apparent to every thinking person. The matter of providing for such a method of communication is clearly one of state-wide concern and not one of purely local interest. This the Constitution of Oklahoma recognizes. The obvious intent is to secure to telephone companies the unhampered right to build their lines. The statute (section 11976) is but a carrying into effect of that purpose and intent.

Viewed in this light, the statute may be said to be a legislative declaration of the public policy of the state, based upon the intent expressed in the Constitution, as to the use that may be made of public highways. See Cater v. Northwestern Tel. Exch. Co., 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310, 51 Am. St. Rep. 543; Taylor v. Portsmouth, K. & Y. St. Ry., 91 Me. 193, 39 A. 560, 64 Am. St. Rep. 216; American Rapid Tel. Co. v. Hess, 125 N. Y. 641, 26 N. E. 919, 13 L. R. A. 454, 21 Am. St. Rep. 764; Pierce v. Drew, 136 Mass. 75, 49 Am. Rep. 7; Julia Bldg. Ass'n v. Bell Tel. Co., 88 Mo. 258, 57 Am. Rep. 398; Magee v. Overshiner, 150 Ind. 127, 49 N. E. 951, 40 L. R. A. 370, 65 Am. St. Rep. 358; People v. Eaton, 100 Mich. 208, 59 N. W. 145, 24 L. R. A. 721; Kirby v. Citizens' Tel. Co., 17 S. D. 362, 97 N. W. 3, 2 Ann. Cas. 152; Frazier v. East Tenn. Teleph. Co., 115 Tenn. 416, 90 S. W. 620, 3 L. R. A. (N. S.) 323, 112 Am. St. Rep. 856, 5 Ann. Cas. 838, 90 S. W. 620. These cases hold that the use of the streets by a telephone company imposes no additional burden so that abutting landowners are not entitled to compensation for the use, and by analogy, defeat the city's right to compensation in this case.

It should also be noted that the validity of section 11976, Okla. Stat. 1931, has not been determined by the Supreme Court of Oklahoma, and that, unless obliged to do otherwise, this court should not adopt a construction of the statute which renders it invalid. Stephenson v. Binford, 287 U. S. 251, 53 S. Ct. 181, 77 L. Ed. 288, 87 A. L. R. 721.

The approval of the charter of the city of Tulsa did not repeal section 11976, Okla. Stat. 1931, or affect the rights acquired by defendant's predecessor under the statute prior to the approval of the charter. Wichita v. Telephone Co., 70 Kan. 441, 78 P. 886; City of Louisville v. Cumberland Telephone & Telegraph Co., supra, 224 U. S. 649, 32 S. Ct. 572, 56 L. Ed. 934.

Furthermore, without reference to the time of adoption of the statute and the city charter, the statute controls. "It is enough to say that the control over streets, alleys, and lanes in cities or villages, which is vested in the municipal government, is but delegated power, and in no way detracts from the power of the legislature to exercise such control itself by direct enactment whenever and so far as it at any time sees fit." Abbott v. City of Duluth (C. C.) 104 F. 833, 836. And see New Hope Telephone Co. v. City of Concordia, 81 Kan. 514, 106 P. 35; City of La Harpe v. Elm Tp., etc., Power Co., 69 Kan. 97, 76 P. 448; article 16, Constitution of Oklahoma; Byars v. State, 2 Okl. Cr. 481, 102 P. 804, Ann. Cas. 1912A, 765; Ex parte Tindall, 102 Okl. 192, 229 P. 125; Sapulpa v. Oklahoma Natural Gas Co., 79 Okl. 196, 192 P. 224; Northern Trust Co. v. Chicago Rys., 318 Ill. 402, 149 N. E. 422; Chicago Motor Coach Co. v. Chicago, 337 Ill. 200, 169 N. E. 22, 66 A. L. R. 834; New England, etc., Co. v. Boston Terminal Co., 182 Mass. 397, 65 N. E. 835; Brand v. Multnomah County, 38 Or. 79, 60 P. 390, 62 P. 209, 50 L. R. A. 389, 84 Am. St. Rep. 772. If there be any conflict between the statute and the charter, the charter is superseded, because the subject of the legislation is of state-wide concern. City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640, 35 A. L. R. 872; Baughman v. Weicker, 136 Okl. 33, 276 P. 208; City of Ardmore v. Excise Board, 155 Okl. 126, 8 P.(2d) 2.

It is not necessary to decide whether the rights created by section 11976 are perpetual as to duration (see City of Louisville v. Cum-

berland Tel. & Tel. Co., 224 U. S. 649, 32 S. Ct. 572, 56 L. Ed. 934; Owensboro v. Cumberland Tel. & Tel. Co., 230 U. S. 58, 33 S. Ct. 988, 57 L. Ed. 1389), or for the corporate life of the grantee only (see Chicago City Ry. Co. v. People, 73 Ill. 541, St. Clair County Turnpike Co. v. People, 82 Ill. 174; Omaha Electric Light & Power Co. v. Omaha (C. C. A. 8) 179 F. 455), although the latter construction might be adopted if necessary to save the statute.

■ Some contention has been made that since the telephone company has laid its wires in conduits beneath the surface of the streets, the state statute is inapplicable. This was done at the request of the city, compliance with the request being no more than a recognition of the right of the city to designate where the wires shall be placed. The statute is not limited solely to the use of poles and wires. Abbott v. City of Duluth, supra (C. C.) 104 F. 833.

Each of the parties has advanced other claims and contentions which need not be considered in view of my opinion on the questions already discussed.

The defendant's motion for a directed verdict is sustained.