Dear Representative Adkins:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 Are "owners of any telegraph or telephone lines" and "telephone or telegraph corporation[s] or association[s] authorized to do a . . . transmission business . . . for such purpose" in the state of Oklahoma pursuant to 18 O.S. 2001, § 601[18-601](a) and OKLA. CONST. art. IX, § 2, required to obtain municipal franchise agreements prior to:
 1. using their facilities located within public rights-of-way to provide transmission services in addition to voice service; or
 2. upgrading and/or adding to their facilities that are already located in public rights-of-way if those facilities could be used to provide transmission services in addition to voice service?
Information obtained pursuant to your Opinion request indicates that a telephone company wishes to begin providing new services, such as video programming, to consumers in addition to voice service. Offering such service will require using the company's existing facilities, as well as adding new facilities, in the public rights-of-way. Your questions require an analysis of Oklahoma's constitutional and statutory provisions regarding telephone companies, as well as the authority of municipalities to require fees or franchises for use of their public rights-of-way.
 CONSTITUTIONAL PROVISIONS AFFECTING TELEPHONE COMPANIES
Article IX, Section 2 of the Oklahoma Constitution grants to certain entities, including telephone companies, statewide authority to construct and operate lines to provide their services. Section 2 reads as follows:
 Every railroad, oil pipe, car, express, telephone or telegraph corporation or association organized or authorized to do a transportation or transmission business under the laws of this State for such purpose, shall, each respectively, have the right to construct and operate its line between any points in this State, and as such to connect at the State line with like lines; and every such company shall have the right with its road or line, to intersect, connect with, or cross any railroad or such line.
Id. (emphasis added). Article IX, Section 34 of the Constitution defines "transmission company" to include "any company, receiver or other person owning, leasing or operating for hire any telegraph or telephone line." Further, "[t]he term `public service corporation' shall include all . . . transmission companies." Id. Telephone companies also qualify as "telecommunications carriers" under 17 O.S. Supp. 2005, § 139.102[17-139.102](27), and are required to obtain a Certificate of Convenience and Necessity to provide services in the State.[1] 17 O.S. 2001, § 131[17-131](A). Thus, telephone companies are transmission companies, public service corporations and telecommunications carriers. In Oklahoma, telephone companies are regulated by the Corporation Commission. See OKLA. CONST. art. IX, § 18; 17 O.S. 2001 Supp. 2005, §§ 131-139.2, 139.101-139.110.
Courts have determined that providing telephone service is an issue of statewide interest. In City of Tulsa v. SouthwesternBell Telephone Co., 5 F. Supp. 822 (N.D. Okla. 1934), aff'd,75 F.2d 343 (10th Cir. 1935), the court found that allowing telephone companies use of public rights-of-way was important because "[a] system of communication by telephone is of more than local interest. . . . The matter of providing for such a method of communication is clearly one of state-wide concern. . . ."Id. at 827. As discussed below, however, the Legislature allowed for municipalities' interests in their public rights-of-way by giving them some control over the placement of telephone lines.
 MUNICIPAL CONTROL OVER PUBLIC RIGHTS-OF-WAY
The Oklahoma Legislature implemented OKLA. CONST. art. IX, § 2 by granting telephone companies access to points throughout the state, including within municipalities, as follows:
 There is hereby granted to the owners of any telegraph or telephone lines operated in this state the right-of-way over lands and real property in this state, and the right to use public grounds, streets, alleys and highways in this state, subject to control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or across, and the place the poles to support the wires are located[.][2]
18 O.S. 2001, § 601[18-601](a) (emphasis added). Although telephone companies have statewide authorization to use the public rights-of-way, by constitutional and statutory provisions municipalities retain control over the placement and regulation of telephone lines within their boundaries.
 No grant, extension, or renewal of any franchise or other use of the streets, alleys, or other public grounds or ways of any municipality, shall divest the State, or any of its subordinate subdivisions, of their control and regulation of such use and enjoyment.
 Nor shall the power to regulate the charges for public services be surrendered; and no exclusive franchise shall ever be granted.
OKLA. CONST. art. XVIII, § 7; see also OKLA. CONST. art. IX, §18 (reserving right of municipalities to "prescribe rules, regulations, or rates of charges" for public service corporations within municipal limits).
Generally, municipalities may regulate use of their public rights-of-way as follows:
 The title to streets, roads and public ways within the limits of a municipality which have been dedicated and accepted by the municipal governing body is held by the municipality in trust for public use and enjoyment.
A municipal governing body may, in the manner provided by law:
 1. Regulate and control the use of streets, roads and other public ways within the limits of the municipality;
 2. Authorize the execution of any and all contracts, easements and permits for the use of roads, streets, and other public ways as the governing body deems to be in the public interest[.]
11 O.S. 2001, § 36-101[11-36-101].
Further, municipalities "may impose a reasonable charge as compensation for the space in streets which is occupied by the operator of a public utility, or for the use of streets." 64 C.J.S. Municipal Corporations § 1496 (2005); see, e.g., Cityof Little Rock v. ATT Communications, 888 S.W.2d 290, 292-93
(Ark. 1994). Information obtained pursuant to your Opinion request indicates that "licensed providers of telecommunications services have for many years voluntarily complied with various municipal ordinances requiring payment of an annual inspection fee designed to compensate municipalities for expenses incurred in managing their rights-of-way. These inspection fees have traditionally been a percentage of local exchange service revenue." Discussion Draft Opinion, n. 1 (on file with Attorney General's Office).
Under OKLA. CONST. art. XVIII, § 5(a), municipalities may grant franchises to certain companies, including utilities, that will use the streets and public ways in conducting their business.Id.; see Okla. Gas Elec. Co. v. Total Energy, Inc.,499 P.2d 917, 922 (Okla. 1972). A municipality has no power, however, to grant a franchise to a telephone company when the right to use the public rights-of-way for operating its business has already been granted to the company directly by the Constitution or the Legislature. S. McAlester-Eufaula Tel. Co. v. State ex rel.Baker-Reidt Mercantile Co., 106 P. 962, 967 (Okla. 1910) (citation omitted); A.G. Opin. 99-19 at 87. As stated above, Oklahoma's Constitution has already granted that right to telephone companies. OKLA. CONST. art. IX, § 2.
 A TELEPHONE COMPANY MAY PROVIDE SERVICES OTHER THAN VOICE SERVICE OVER ITS LINES WITHOUT BEING REQUIRED TO OBTAIN A MUNICIPAL FRANCHISE.
You ask whether a telephone company is required to obtain a separate franchise agreement from a municipality, in addition to the statewide authorization granted in Okla. Const. art. IX, Section 2 and 18 O.S. 2001, § 601(a), to use the municipality's public rights-of-way to provide video service over its lines. The answer is no.
Oklahoma law does not define "telephone line." As technology has changed since the constitutional provisions were enacted regarding telephone companies and their lines, the Legislature has decided to regulate telephone companies, among others, as "telecommunications carriers." See Oklahoma Telecommunications Act of 1997, 17 O.S. 2001 Supp. 2005, §§ 139.101-139.110 [hereinafter Telecom Act]; see also Footnote 1. Among telecommunications carriers, telephone companies that had furnished local exchange service in the state before July 1, 1995 were deemed "incumbent local exchange telecommunications service providers" or "ILECs." 17 O.S. Supp. 2005, § 139.102[17-139.102](10). Under the Telecom Act, the plant and equipment needed to provide telecommunications service are called "facilities," a term defined broadly enough to encompass not only telephone lines, but also wires, poles, cables, switches, receivers, transmitters, and any other equipment necessary to provide telephone (or other telecommunications) service.
 "Facilities" means all the plant and equipment of a telecommunications service provider, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with the regulated business of any telecommunications service provider[.]
17 O.S. Supp. 2005, § 139.102[17-139.102](8).
A "telephone line" does not cease to be a telephone line because it is used for transmitting video service in addition to voice service. Although we can find no Oklahoma cases on this point, cases in other jurisdictions that grant telephone companies statewide access to public rights-of-way have decided this issue.
For example, in Pacific Telephone Telegraph Co. v. City of LosAngeles, 282 P.2d 36 (Cal. 1955), the trial court found that a telephone company was entitled to use its lines for transmitting various services, including television broadcasts. In this case a city wanted a telephone company to obtain a municipal franchise to use its rights-of-way, contending that the telephone company's statewide authorization was limited to transmitting "articulate speech." Id. at 42. The California Supreme Court disagreed, saying that the law granting the company statewide authorization to construct and operate telephone lines along public rights-of-way did not restrict what could be transmitted by electrical impulses over those lines. Id. The same court reiterated this idea in Television Transmission, Inc., v. PublicUtilities Commission, 301 P.2d 862, 865 (Cal. 1956) ("Pacific Telephone and Telegraph Company was unquestionably a telephone corporation, and it remained a telephone corporation and its lines remained telephone lines, even though they were incidentally used to transmit other forms of communication.").
Courts construing telephone companies' power of eminent domain have used similar reasoning to determine that the companies' installation of new coaxial cable to support television transmission as well as voice service did not change their status as telephone companies, or negate the status of their facilities as telephone lines. ("[T]he primary purpose for which the coaxial cable is being installed is to provide telephone and telegraph circuits and in addition to these uses it no doubt will be used in the future for television purposes. . . . [T]he transmission of television is merely an advancement or improvement in the art of telegraphy and telephony and therefore the right of eminent domain for telegraph and telephone purposes . . . is applicable to television.") Ohio Tel. Tel. Co. v. Steen, 85 N.E.2d 579,580 (Ohio 1949). See also Ball v. Am. Tel. Tel. Co.,86 So.2d 42, 45 (Miss. 1956) ("We should not construe the eminent domain statutes so as to require the telephone and telegraph companies to secure new easements for every new device that employs the use of electrical impulses even when the new device performs a function other than the transmission of sound or articulate voice. . . . [T]elevision transmission is an integral part of the telephone and telegraph business as it has developed and now exists.").
Using the reasoning in these cases, we conclude that a telephone company that already possesses statewide authority to place its telephone lines in the public rights-of-way need not obtain a separate municipal franchise to provide additional services, including video programming, over its telephone lines.[3]
 It is, therefore, the official Opinion of the Attorney Generalthat:
 A telephone company that already possesses statewide authority to place its telephone lines in the public rights-of-way need not obtain a separate municipal franchise to provide additional services, including video programming, over its telephone lines. Okla. Const. art. IX, § 2.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DEBRA SCHWARTZ ASSISTANT ATTORNEY GENERAL
I-16
[1] A "[t]elecommunications carrier" is "a person that provides telecommunications service in this state[.]" "`Telecommunications' means the transmission, between or among points specified by the user, of voice or data information of the user's choosing, without change in the form or content of the information as sent and received[.]" 17 O.S. Supp. 2005, § 139.102[17-139.102](26), (27).
[2] Although this statute expressly applies to above-ground wires and poles, case law indicates that the right to place lines underground is included. See Southwestern Bell Tel. Co.,5 F. Supp. at 828 ("The statute is not limited solely to the use of poles and wires" but includes "wires in conduits beneath the surface of the streets") (construing the predecessor to Section 601(a), which contained identical language).
[3] You have not asked, and this Opinion does not address, whether a telephone company that provides video programming services is subject to federal and state laws governing cable television operators.