## CIRCUIT COURT OF THE CITY OF NORFOLK

Alleghany Pepsi-Cola
Bottling Co.

v.

Sherry Johnson and
Jeffrey L. Gardner

Case No. (Chancery) C-82-1128

By JUDGE EDWARD L. RYAN, JR.

March 16, 1983

It seems to be undisputed that the Virginia interpleader statute (§ 8.01-364) is patterned on the federal provisions for interpleader (28 U.S.C. § 1335 and F.R.C.P. 22). It follows that the decisions of the United States courts construing the federal provisions are and should be persuasive guides for state courts. Plaintiff's citation of federal authorities show overwhelmingly that the former technical requirements of pure interpleader, or bill in the nature of interpleader, are not applicable to modern statutory interpleader. (See p. 4 of plaintiff's brief for summary of the former technical restrictions or requirements.)

But counsel for both defendants point alertly to the fact that the Virginia statute or statutory interpleader contains the words "to the same property or fund" which are entirely absent from the federal statute and rule of civil procedure. They argue that the Virginia legislature gave some import and meaning to the requirement that interpleader be allowed *only* if a stakeholder be exposed "to multiple liability through the existence of claims by others *to the same property or fund* held by him on his behalf." The author of "Interpleader In

Virginia," *University of Richmond Law Review*, vol. 13, p. 331 (1979), written two years after passage of the modern Virginia interpleader statute, meets this argument head-on and his comprehensive review convinces him of the following:

> To clear up these inconsistencies, the statute should be read as abolishing the identity of claims rule. And the concept "same property or fund," included therein, should be read merely as facilitating an understanding of when interpleader is appropriate under the primary test, that is, mutually exclusive claims must be directed against the same property or fund.

In response to the author, the defendants' further argue that their claims are for different amounts, are different cause of action (contract and tort) and seek entirely different relief. It follows that the inclusion of "same property or fund" means that the old equitable requirement of "identity of claims" has been retained in Virginia, pointing up the major distinction between the Virginia statute and the federal provisions. As if by anticipation, the author further says (p. 340):

> If this is the case, then interpleader in Virginia will be denied "unless the claims coincide at every point like two superimposed triangles in plane geometry." In its strictest terms, it will require that the claims must not deviate in the amount sought, the form of action, or the relief requested. Even at its best, the identity of claims rule is nothing more than "an unsuccessful attempt to phrase the principle of mutual exclusiveness."
>
> Hence, it is very doubtful that the revisers intended to retain the requirement of identity of claims as that concept is traditionally used. Indeed, such a requirement would be inconsistent with the reviser's intent to create "a modern interpleader practice. . . extended on practical grounds far beyond the traditional remedy in equity and the early ancillary statutory interpleader at law." A further indication

of the reviser's intent is their explanation of the so-called "identity of claims" concept in the Virginia statute as follows:

> . . . While claims need not have a common origin and can be founded on different theories of recovery (i.e., one in contract, another in tort), such claims must relate to or affect the same property or fund.

This explanation does not coincide with that of the early equity courts. Furthermore, the requirement of identity of claims is inconsistent with the face of the Virginia interpleader statute which expressly abolishes the requirement as follows:

> "*It is not ground for objection to joinder that the claims* of the several claimants or the titles on which their claims depend do not have a common origin or *are not identical.*" (Emphasis by the author.)

In any event, the declaration of the contest by the plaintiff-stakeholder created a fund and property, and rights attendant on property. In the absence of the contest, neither of the defendants would have any claim against the plaintiff. It is true that judgments rendered in favor of the defendants would be paid out of general funds or monies in the coffers of the plaintiff, nevertheless, the defendants' only rights against the plaintiff are part and parcel of the *contest.* "A purse, prize or premium is ordinarily some valuable thing offered for the winner of a contest. . . Moreover, a purse, prize or premium differs from a stake, bet or wager in that in the former the donor, or person offering the same, has no chance of getting back the thing offered, but, if he abides by his offer he must lose." 38 Am. Jur. 2d, *Gambling*, § 264. In short, the declaration of the contest segregates or allocates or sets up for special purposes a special fund or property. Also, "the winner of a prize may assign his winnings in a prize contest, and such assignment becomes effective upon endorsement of an order to that effect." *Ibid.* § 267.

> *Assignment.* A transfer or making over to another of the whole of any property, real or personal. . . or of any estate or right therein.

It includes transfers of all kinds of property. *Black's Law Dictionary*, p. 155.

Finally, "the common law form of action by one who enters and performs the conditions of a prize contest, against a sponsor of a prize contest. . . is assumpsit or debt." *Ibid*, § 272. See also Annot., "Private Rights and Remedies Growing Out of Prize Winning Contests," 87 A.L.R.2d 646.

The plaintiff and the two defendants, unknown to each other, were drawn together solely by the contest and are now before the court contending property rights solely because of the contest. The singularity is evident.

Defendants' motions to dismiss are denied.

### November 15, 1983

The current question for decision before the court is Sherry Johnson's motion to exclude evidence in support of the allegations made in paragraphs 10 through 15 of the Answer to Bill of Complaint filed by Sherry Johnson, such answer having been filed by Allegheny Pepsi-Cola Bottling Company. The allegations, if true, raise a serious question of possible unfair dealing on the part of Sherry Johnson.

The leading and a frequently cited case on unfair dealing is *Davidson* v. *Times Printing Co.*, 116 P. 18 (Wash. 1911). In the reported case plaintiff entered a contest in which the identification of a certain person was the goal to be achieved in order to win a money prize. The person was identified only by a photograph that appeared in the local newspapers, and was otherwise unknown. An affirmative defense of the defendant's answer alleged that the plaintiff in collusion with an employee of the unknown person was enabled to make a prompt identification. After investigation revealed this fact the defendant concluded that plaintiff did not earn the reward and refused to pay. Suit followed with verdict in favor of plaintiff but the court thereupon granted a judgment for defendant notwithstanding the verdict. The court said "we are satisfied that the trial court should have directed a verdict for two reasons." The first reason (not applicable here) was that the rules of the contest made the defendant the sole judge of any dispute arising

over the reward and made its good faith decisions final. The second reason was set out as follows:

> Furthermore, the offer was open to the public, and was intended to be conducted fairly by the contestants. The plaintiff in collusion with an unfaithful employee of Mr. Donohue, learned of the residence of Mr. Donohue, and by such unfair means attempted to secure the reward. Even if he apprehended Mr. Donohue, under these conditions defendant would have been justified in denying plaintiff's claim, upon the ground of unfair dealing.
>
> We are satisfied, therefore, that there was no question under the evidence to be submitted to the jury, and the judgment is affirmed.

Plaintiff in the case at bar emphasizes that there was no bar in the rules or requirement as to how she acquired the bottle caps, but in *Davidson* there was no rule mentioned barring a conspiracy with an unfaithful employee. This court, and any other court, should not countenance unfair dealing in any litigation and to impose such a rule of conduct is not to make a new contract for the parties or to add to an existing contract. It is merely an application of the doctrine that one cannot profit by his own misdeed. Further, equity will not enforce a technical legal right to the unconscionable injury of another.

> Term "bad faith" and "unfair dealing" embrace and connote deceit, fraud, dishonesty, one-sidedness, of intention or purpose. 43 *Words and Phrases*, p. 211.

### Collect/Collected

Paragraph 1 of the contest rules requires the contestants to "collect" and "deliver" the bottle caps, each word being of equal importance, i.e., if contestant does not deliver he cannot win and the same is true of a failure to collect. Also, paragraph 5 speaks of caps "collected." There seems to be a serious question as to whether she was guilty of unfair dealing toward (1) the Pepsi-Cola

Company and (2) the other innocent contestants. An examination of the word is in order.

> *Collect.* To gather together; to bring scattered things (assets, accounts, articles of property) into one mass or fund; to assemble. *Black's Law Dictionary*, Third Edition, p. 349.

> *Collect.* 1. To *gather* into one body or place; assemble. . . 4a. To demand and obtain payment of. 4b. To obtain, as contributions, from many persons. . . syn. See GATHER. . .(Italics added.) *Webster's New Collegiate Dictionary*, p. 161.

> *Gather* v.t. 1. To bring together; to collect. 2. To pick out and collect, as a harvest; to cull; pick. 3. To accumulate by collecting and saving little by little. . . . 5. To gain or win as by gradual increase. . . --v.i. . . 3. To grow larger by accretion; to increase. 4. To bring things together by way of increase; acquire. *Webster's New Collegiate Dictionary*, p. 343.

> "The meaning of the word 'collect', as given by the lexicographers, is 'to gather; to assemble.' When used with reference to the collection of money, it often implies much more than the mere act of receiving the money. *Hubbell* v. *Bernalillo County*, 13 N.M. 546, 86 P. 430; *Purdy* v. *Independence*, 75 Iowa 356, 39 N.W. 641." *Okfuskee County* v. *Hazlewood*, 192 P. 217, 79 Okl. 198, 11 A.L.R. 709.

### Jury Consideration

The court concludes that any jury would be entitled to hear all of the evidence as to how Johnson acquired her caps.

*But* should the court even permit the case to go to the jury? Should the court rule now, or entertain a motion to grant summary judgment for defendant when Johnson rests or at the conclusion of all the evidence?

If the case is submitted to the jury on proper instructions would those instructions outlined in Chapter 39, "Fraud," and Chapter 45, "Contracts," of *Model Jury Instructions in Virginia, Civil*, as modified, along with definitions of "collect," "collected," etc., be sufficient?

The court will hear counsel on this point at their convenience.